## MISSOURI, K. & T. RY. CO. et al. v. DEWEY PORTLAND CEMENT CO.

No. 14494—Opinion Filed June 23, 1925.

(Syllabus.)

1. **Commerce—Federal Transportation Act —Power of State to Initiate Reduction in Intrastate Rates During Guaranty Period.**

Section 208 (a) of the Transportation Act gives the state authority to propose or initiate a reduced rate on intrastate shipments during the guaranty period, but all such changes before becoming effective are subject to review by the Interstate Commerce Commission, and unless the same are approved by such commission, are invalid.

2. **Same—Review and Approval by Federal Commission.**

"The Transportation Act, section 208 (a), providing that all rates in effect February 29, 1920, on lines of carriers subject to the Interstate Commerce Act shall continue in force and effect until changed by state or federal authority, respectively; but prior to September 1, 1920, 'no such rate * * * shall be reduced * * * unless such reduction * * * is approved by' the Interstate Commerce Commission, does not require prior conditional approval by the Interstate Commerce Commission to enable" the Corporation Commission "to entertain a complaint of an intrastate rate during the six months' guaranty period, ending September 1, 1920, but the federal commission acts as a reviewing body on the determination by the state commission, and must approve it to make it effective."

3. **Carriers—Reparation for Discriminatory Rates—Limitation of Actions.**

The statute of limitation applicable to actions on penalties and fines does not apply to an application for reparation on account of discriminatory rates. The law permitting such application and reparation thereon is remedial only.

4. **Same—Finding of Corporation Commission Sustained and Order Modified.**

Record examined, and held, that the evidence supports the order and judgment of the Corporation Commission in its finding that the rate charged the plaintiff was discriminatory. Order and judgment of the Corporation Commission modified.

Appeal from Order of Corporation Commission.

From an order in favor of complainant, Dewey Portland Cement Company, the Mis-

souri, Kansas & Texas Railway Company and others appeal. Order modified.

Cottingham & McInnis, John E. M. Taylor, Stuart, Sharp & Cruce, M. D. Green, and H. L. Smith, for plaintiffs in error.

Raymond W. Moore, A. Carey Hough, and George A. Henshaw, for defendants in error.

LESTER, J. For convenience the complainant before the Corporation Commission will be referred to as plaintiff, and the respondent as defendant.

This is an appeal from the Oklahoma Corporation Commission's final order of January 8, 1923, numbered 2149, in cause No. 4833, being the cause entitled "Dewey Portland Cement Company, Complainant, v. The Atchison, Topeka & Santa Fe Railway Company; Kansas, Oklahoma & Gulf Railway Company; Missouri, Kansas & Texas Railway Company, and C. E. Schaff, Receiver. Thereof, and the St. Louis-San Francisco Railway Company, Defendants," in which cause the plaintiff filed complaint before the Corporation Commission on September 16, 1922, for reparation and refunds in the sum of $9,427.97, with interest thereon, representing alleged illegal freight charges collected from plaintiff by defendants on shipments of slack coal shipped over defendants' lines of railroad from coal mining points in Oklahoma to plaintiff's cement plant at Dewey, Okla., during the period from March 1, 1920, to September 1, 1920, which period was the guaranty period during which the United States government guaranteed to the railroads formerly under federal control, a certain income, as provided by the Act of Congress of February 28, 1920, known as the Transportation Act. The plaintiff claims in its complaint that the freight charges per ton in controversy were materially greater than the legal charges prescribed by the Corporation Commission and affirmed by this court for similar movement of slack coal for a period subsequent to September 1, 1920, and materially higher than the rates on carload shipments of slack coal from mines in Pittsburg, Kan., group to cement mill points in Kansas, and to Dewey, Okla., for the same period of time. Plaintiff also claims that its competitors secure their coal supply from the Pittsburg, Kan., group of mines under transportation conditions similar to those from Oklahoma mine points to Dewey, but plaintiff alleges that it is compelled to meet the competition of the Kansas cement mills with cement manufactured with Oklahoma coal, and that freight charges on said coal, as complained of by it, are unjust and unreasonable, in that the defendants maintained lower rates on slack coal carloads from Pittsburg, Kan., group of mines to Dewey and to Kansas cement mill points than the rates charged plaintiff for slack coal from Oklahoma mine points, thereby, as plaintiff claims, giving its competitors in Kansas, including those in the Kansas gas belt, an undue preference and advantage over plaintiff, and it contends that the freight rates charged it are arbitrary, illegal, and unwarranted.

The defendants filed separate answers, in which they denied that the rate charged the plaintiff was unfair and discriminatory, but alleged that said rate was legal, fair, and just; defendants also set forth in their answer the following statement:

"That they are and at all times in controversy herein were common carriers by railroad of passengers and freight for hire in interstate and intrastate commerce, with lines of railway running into and through The states of Missouri, Kansas, and Oklahoma, which, at the time in controversy herein, were being operated by said defendant receiver as an officer of the United States District Court for the Eastern Judicial District of the state of Missouri, and defendants state that they are and at all times in controversy herein were subject to the acts of Congress regulating commerce and that during the period of federal control of railroads, their said lines of railroad were under federal control and being operated by the United States government through the President and Director General of Railroads, during which time, as well as during the time in controversy herein, the rates, fares, charges, classifications, regulations and practice in effect on said lines of road were those prescribed by the United States government through the President and Director General of Railroads and duly filed with the Interstate Commerce Commission and in full force and effect at all times during the period in controversy herein from March 1, 1920, to September 1, 1920, which period is known as the guaranty period, as provided by the Act of Congress of February 28, 1920, known as the 1920 Transportation Act, said rates, fares, charges, classifications, regulations and practices have been continued in full force and effect during said guaranty period by the provisions of section 208 (a) of said Transportation Act, by the terms of which said section it was provided that such rates, fares, charges, classifications, regulations, and practices should not be reduced and should not be changed in such manner as to reduce them unless such reduction is approved by the Interstate Commerce Commission, and defendants respectfully state and show to this Honorable Commission that the relief sought herein by the complainant would, if in effect, reduce such rates, fares, and charges, and that the Interstate Commerce Commission has never

approved any such proposed change or reduction and that this commission has no jurisdiction over the subject-matter of this action and that any order which this commission might make purporting to grant the relief prayed for by the complainant herein would be in conflict with and in violation of said act of Congress known as the Transportation Act and the other acts of Congress regulating commerce, as well as in violation of the Constitution of the United States, and would, therefore, be wholly void; and the defendants state that the controversy involved herein is now pending before the Interstate Commerce Commission under docket No. 13503."

A hearing was had before the Corporation Commission, and the issues were determined against the defendants, and the Corporation Commission adjudged that the plaintiff have and recover of and from the defendants the sum of $9,427.92, as reparation for rates charged the plaintiff. The defendants prosecute this appeal to reverse the action of the Corporation Commission.

There are eight assignments of error contained in the petition in error, and for the purpose of discussing said assignments we will group assignments numbered 1 and 3 together, 4, 5, 6, 7, and 8 together, and discuss No. 2 separately.

Assignments of error numbered 1 and 3 challenge the jurisdiction of the Corporation Commission in assuming jurisdiction and rendering judgment therein because of section 208 (a) of the Act of Congress of February 28, 1920, known as the Transportation Act, which is as follows:

"All rates, fares, and charges, and all classifications, regulations, and practices, in anywise changing, affecting, or determining any part of the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare or charge unless such reduction or change is approved by the commission."

It will be observed that the act provides that all rates and charges shall remain in force and effect until thereafter changed by state or federal authority or pursuant to law, but prior to September 1, 1920, no such rate or charge shall be reduced unless such reduction shall be approved by the commission. Clearly it was intended by this act that if a reduction was sought and it involved interstate shipment, such reduction must be made by the federal government. However, before such reduction could become effective, the Interstate Commerce Commission would be required to approve the same. In the event that the reduction involved an intrastate shipment, then it devolved upon the state to provide for such reduction, and before same could become effective, it must likewise be approved by the Interstate Commerce Commission. This identical question has been passed upon by the Supreme Court of Pennsylvania, in the case of Lehigh & N. E. R. Co. v. Public Service Commission, 121 Atl. 205, in which the court said:

"Under the Transportation Act and its sovereign power, the state, through the state commission, had exclusive power and plenary control of the rates after September 1, 1920, saving the exceptions mentioned, and as to these exceptions an independent action would be necessary to assert rights thereunder.

"The state commission being clothed with authority, was it otherwise limited by the act of Congress? If the state has jurisdiction to reduce a rate, then the complaint could be heard at any time, the reduction, if any, to be subject to approval by the federal commission under 208 (a). * * *"

"Section 208 (a) does not prohibit a complaint from being filed against a rate established during federal control for the guaranty period. It does prohibit a reduction in rates without the approval of the Interstate Commission. The superior court found from the record sufficient evidence to sustain the state commission's order, and that the reduction was not confiscatory. Without considering the proceedings before the Interstate Commerce Commission on the complaint there filed, and assuming the state's action was on a rate not before assailed, if we affirm this order the carrier is not injured until the state commission's order is approved by the federal commission, and afterwards only on an order of reparation. Carriers are afforded every opportunity contemplated by section 208 (a) to contest before the commission and the courts the complaint filed against the rate, but when the order is here finally approved, the federal authorities must also act before the reduction can be made effective. It is not necessary to state action that a conditional approval from Washington be first obtained. Section 208 (a) reads: 'No such rate * * * shall be reduced * * * unless the reduction * * * is approved.' There must be prior action somewhere to secure approval. The act of Congress intended the Interstate Commerce Commission to act as a reviewing body over rates during the guaranty period, determining whether the reduction is

a proper one, having in view the purposes of the act."

It is our opinion that the state has the right to take the initial action in seeking a reduction on interstate rate during the guaranty period and that the finality of such reduction rested with the Interstate Commerce Commission.

The defendants urge the proposition that the plaintiff, by filing its complaint before the Interstate Commerce Commission prior to the time it sought to invoke the jurisdiction of the Corporation Commission, deprived the Corporation Commission of jurisdiction over the subject-matter. We do not agree with this contention, for the reason that if the Transportation Act contemplated that the state rate-making body should take the initiative in the matter of reducing the rate on intrastate shipments during the guaranty period, then the complaint before the Interstate Commerce Commission was prematurely filed, and therefore plaintiff had the right to file such complaint before such body that had original jurisdiction over the subject-matter. Defendants in their brief contend that "even if the foregoing is not a correct interpretation of the law, then the complainants are still barred by the statute of limitation as fixed by paragraph 4 of section 185, Comp. Stat. 1921, fixing a limitation of one year on actions for penalty or forfeiture." Defendants further contend that section 3471, Comp. Stat. 1921, provides that the Oklahoma statute undertaking to give the Corporation Commission jurisdiction to grant reparation in its finding is in the nature of a penalty statute, and is required to be collected "in the same manner that fines and penalties are collected" as provided by section 3471, Comp. Stat. 1921, and that the complainants having filed their complaint more than two years after the guaranty period, the statute of limitation thereby prevented the plaintiff from recovery.

We have read the authorities submitted by the defendants on this question, and do not think they are in point. While the statute provides that the procedure for collecting a judgment "shall be in the same manner that fines and penalties imposed by the Corporation Commission are authorized to be collected by law," yet this provision does not necessarily convert the cause of action upon which a judgment might be had into a fine or penalty. The noun "penalty" is defined "forfeiture," or to be forfeited for noncompliance with an agreement; a fine. Worcester's Dict. The words "forfeit" and "penalty" are substantially synonymous.

In Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123, the court said:

"The words 'penal' and 'penalty,' in their strict and primary sense, denote a punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws."

In 6 Words and Phrases, page 5271, appears the following:

'The prime object of every statute strictly penal is to enforce obedience to the mandate of the law by inflicting punishment upon those who disregard them, and in statutes primarily and properly penal the provision for punishment never arises in uncertainty—is never based upon a contingency. The general public is supposed to be injured by violation of every penal statute, whether any special injury results to any particular individual or class of individuals or not. The punishment is provided as a sanction to the law, and is imposed for the public good, to deter others from the commission of like offenses. **It would be, therefore, palpably incongruous to call a statute penal which did not contain a distinct and certain provision for punishment in every case where the duties enjoined by it were ignored.** The penal statutes, in the strict and proper sense, are not statutes creating private rights and proper remedies. Nebr. Nat'l Bank v. Walsh, 59 S. W. 952, 953, 68 Ark. 433, 82 Am. St. Rep. 301.'

In a case decided by the United States Supreme Court, February 19, 1906, subsequent to the cases cited by appellants, being the case of New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 Sup. Ct. Rep. 272, 50 L. Ed. 615, affirming Interstate Commerce Commission v. Chesapeake & O. Ry. Co. (1904) 128 Fed. 59, Mr. Justice White held that the Interstate Commerce Act was enacted to secure equality of rates and to destroy favoritism, and for those purposes is a remedial statute, to be interpreted so as to reasonably accomplish them.

Article 9, sec. 18, of the Constitution of Oklahoma, which empowers the Corporation Commission and charges it with the duty of correcting abuses and preventing unjust discrimination and extortion by transportation companies, or section 3470, Comp. St. of Oklahoma, 1921, which empowers the Corporation Commission to determine the amount of refund due in all cases where charges were made in excess of rates thereafter declared to be the legal rates which would have applied to the service rendered and to whom the overcharge shall be paid, does not contain any penalty whatever for the violation of said provision.

A statute cannot be declared to be penal when no penalty is provided therein. The statute in question, merely requiring the refund of excessive charges collected by a public service corporation, is remedial, and and we therefore hold that the statute which limits the time in which an action may be brought to enforce a penalty or fine is not applicable, and that the plaintiff's cause of action is not barred by the statute of limitation

The other propositions urged by the plaintiffs in error are that the Corporation Commission erred in its findings of fact and they are not supported by the evidence, and its judgment was not supported by its findings of fact. We have carefully examined the evidence introduced before the commission, which included the oral testimony of the witnesses, the introduction of exhibits, etc., and we are of the opinion that the evidence supports the order and judgment of the Corporation Commission. Owing to our construction of section 208 (a) of the Transportation Act, that no reduction of any rate or fare charged during the guaranty period should become effective unless such reduction or charge is approved by the Interstate Commerce Commission, and the purpose and effect of the Corporation Commission being to reduce the rate charged by the defendants as carriers of intrastate shipments during the guaranty period, we hold that the Corporation Commission was within its jurisdiction in granting reparation and reducing the rates so charged the plaintiff, subject to the approval of the Interstate Commerce Commission, but we further direct that the order and judgment of the Corporation Commission be modified to the extent that said order and judgment shall not become effective until said reparation and reduction of rates, as provided in said order and judgment, shall have been approved by the Interstate Commerce Commission.

NICHOLSON, C. J., and MASON, PHELPS, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 12 C. J. p. 85, § 113 (1926 Anno.). (2) 12 C. J. p. 85, § 113 (1926 Anno). (3) 10 C. J. p. 503, § 809 (1926 Anno).