**HOLLIMAN, County Treas., v. COLE.**

No. 25355. June 26, 1934.

Marvin Shilling, Co. Atty., for plaintiff in error.

Champion, Champion & Fischl and Hayes, Richardson, Shartel, Gilliland & Jordan, for defendant in error.

OSBORN, J. The sole question involved in this proceeding concerns the validity and legality of an executive order of the Honorable William H. Murray, the Governor of the state of Oklahoma, issued on January 15, 1934, remitting the penalty on delinquent taxes to all taxpayers in the state of Oklahoma.

Plaintiff seeks a writ of mandamus against the county treasurer of Carter county directing him to issue to plaintiff a tax receipt.

The facts are not in dispute. Plaintiff was the owner of certain property in Ardmore, Carter county, Okla., which had been assessed for taxes for the years of 1926 to 1932, inclusive. The taxes for said years had not been paid. Plaintiff, desirous of availing himself of the benefits of said executive order, tendered to the county treasurer of said county the amount of the taxes and costs covering the years in question, and demanded a tax receipt in full. The county treasurer demanded, in addition to the taxes and costs, a penalty of one per cent. per month on the taxes admitted to be due, and, upon refusal of plaintiff to pay said penalty, refused to issue said tax receipt.

On February 3, 1934, the trial court issued a peremptory writ of mandamus to the county treasurer directing him to accept said tender and to issue receipts in full for said taxes. From this judgment the defendant appeals.

That portion of the executive order pertinent to the question involved herein is as follows:

"Now, therefore, I, Wm. H. Murray, the Governor of the state of Oklahoma, do hereby grant, remit, and commute the penalties on all classes of property upon which taxes are levied for the state, county, or any subdivision thereof, levied and assessed for the year 1933, and all prior years thereto from the beginning of statehood; and to commute, parole, and pardon all taxpayers upon his assessed ad valorem tax to the amount of penalty assessed under the law and exempting them from any and all penalties, and commute the same upon all classes of taxpayers paying an ad valorem tax upon which the penalty has already been attached, for the year 1933 and all years prior thereto, as aforesaid, provided, the taxes are paid in full to July 1, 1934."

Section 10, art. 6, of the Constitution is as follows:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon granted, stating the name of the convict, the crime of which he was convicted, the date and place of conviction and the date of commutation, pardon, parole, or reprieve."

The Governor's executive order, by another paragraph therein, recites that it is predicated upon the above-quoted provision of the Constitution. It is conceded, however, that there is no authority in the constitutional provision for the executive order herein involved. But it is contended that the authority for the issuance of said order is found in section 3264, O. S. 1931, which provides as follows:

"The Governor shall have the power to grant, after conviction, pardons and paroles for all offenses committed against the laws of this state, except cases of impeachment and to remit fines and forfeitures, and he may commute death sentence of persons to imprisonment for life."

It is noted that the words, "and to remit fines and forfeitures," used in the above statute, are not found in the Constitution, and this is the language upon which plaintiff relies to justify and authorize the executive order of the Governor.

It is also conceded that the statutory provision is not repugnant to the Constitution. We will therefore not notice that question.

Let us examine the words of the act in some detail in an effort to discover the legislative meaning.

A "pardon" is defined as an act of grace and mercy bestowed by the state through its Chief Executive upon offenders against its laws, after conviction. Ex parte Xenophon Jones, 25 Okla. Cr. 347, 220 P. 978, 34 A. L. R. 206; Stewart v. State, 11 Okla. Cr. 400, 146 P. 921. The above definition, or one similar thereto, has been adopted by practically every state in the Union. See 46 C. J. 1181. It is observed that the granting of a pardon by the Chief Executive contemplates a charge of a criminal offense.

A "fine" is defined as a pecuniary punishment imposed by a lawful tribunal upon a person convicted of a crime or misdemeanor. Murphy v. State of Oregon (Ore.) 250 P. 834, 49 A. L. R. 384; 25 C. J. 1148; Commonwealth v. French, 130 Ky. 744, 114 S. W. 255; United States v. Mitchell, 163 Fed. 1014.

The word "fine" does not always mean a pecuniary punishment for an offense inflicted by a court in the exercise of criminal jurisdiction. It has other meanings and may include a forfeiture, or a penalty, recoverable by civil action. The true signification of the word, when used in a statute, must depend somewhat upon the context, and the meaning should be gathered from the intention, if it can fairly be ascertained

from the language used. In ordinary legal phraseology, it is said the term "fine" means a sum of money exacted of a person guilty of a misdemeanor, or a crime, the amount of which may be fixed by law or left to the discretion of the court, while a penalty is a sum of money exacted by way of punishment for doing some act which is prohibited, or omitting to do something which is required to be done. State v. Addington, 143 N. C. 683, 57 S. E. 398, 11 Ann. Cas. 314 (citing Black's Dict., p. 494; State v. Burton, 18 S. E. 657, 113 N. C. 655; People v. Nedrow, 13 N. E. 533, 122 Ill. 363; Hanscombe v. Russell, 11 Gray [77 Mass.] 373; A., T. & S. F. Ry. Co. v. State ex rel. Sanders, 22 Kan. 1; Village of Lancaster v. Richardson [N. Y.] 4 Lans. 136.)

When imposed as a punishment for a statutory offense, there is no substantial difference between a fine and a forfeiture. A fine is a pecuniary punishment for an offense, and a pecuniary punishment called a "forfeiture" is equivalent to the same pecuniary punishment called a "fine." State v. McConnell, 70 N. H. 158, 46 Atl. 458.

The words "fine" and "forfeiture" in the statute are often interchangeably used; and where "forfeiture" is employed to denote punishment, it is the equivalent of "fine." Bryant v. Rich's Grill, 216 Mass. 344, 103 N. E. 925, Ann. Cas. 1915B, 869.

The word "forfeit," in its ordinary use in cases, is synonymous with "mulct," "fine," or "penalty." Keinath, Schuster & Hudson v. Reed (N. M.) 137 P. 841. The words "penalty," "liability," and "forfeiture" are frequently treated as synonymous with the word "punishment," in connection with crimes of the highest grade. Jones v. State, 10 Okla. Cr. 216, 136 P. 182. "Forfeiture" is something lost for the commission of a crime; something paid for the expiation of a crime; that which is forfeited or lost by neglect of duty; that which is lost, or the right to which is alienated, by a crime. In re Court of Pardons (N. J.) 129 Atl. 624. See, also, United States v. Reisinger, 128 U. S. 401, 9 S. Ct. 100, 32 L. Ed. 480.

It is contended by the plaintiff in this case that the terms "penalty" and "forfeiture" are synonymous, and in some cases cited it is so announced. The conclusion, however, depends entirely upon the manner in which the terms are used. In the case of Missouri, K. & T. Ry. Co. v. Dewey Portland Cement Co., 113 Okla. 142, 242 P. 257, it is said:

"The noun 'penalty' is defined 'forfeiture,' or to be forfeited for noncompliance with an agreement; a fine. Worcester's Dict. The words 'forfeit' and 'penalty' are substantially synonymous. In Huntington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123, the court said:

"'The words "penal" and "penalty," in their strict and primary sense, denote a punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws.'"

It is apparent that the terms "forfeiture" and "penalty" are synonymous only when the penalty referred to is for the violation of a criminal law.

In the case of Hutton v. McCleskey, 132 Ark. 391, 200 S. W. 1032, which is somewhat analogous, but not directly in point, the court was concerned with an executive order of the Governor remitting to all taxpayers a tax penalty provided by an act of the Legislature for failure to assess property for taxation within the time and in the manner prescribed by the statute. The Constitution of Arkansas (art. 6, sec. 18) empowered the Governor, in criminal and penal cases, "to remit fines and forfeitures under such rules and regulations as shall be prescribed by law." The court therein held that under the terms of the Constitution such power applied only to criminal and penal cases after conviction or judgment, and had no application to relief from civil penalties and forfeitures, and that the Governor was without power to grant such relief under his constitutional authority.

In the case of Commonwealth v. French (Ky.) 114 S. W. 255, a judgment had been rendered against French in the sum of $5,000 for contempt. It appears that an act of the Legislature had provided for the assessment, on appeal, where the appeal was unsuccessful, of a penalty equal to 10 per cent. of the amount of the judgment appealed from. The judgment was appealed and affirmed and a $500 penalty assessed. The Governor of Kentucky, under the power granted him by the Constitution to remit fines and forfeitures, remitted the amount of the judgment and the penalty, but the trial court thereafter rendered judgment against French for $500 damages. It was conceded that the Governor had the power to remit the judgment for contempt, but the court held that the Governor was without power to remit the $500 assessed as damages on appeal. In discussing the nature of said item, the court said:

"Is it a forfeiture? In Black's Law Dictionary a 'forfeiture' is defined to be 'the incurring of a liability to pay a definite sum

of money as the consequence of violating the provisions of some statute or refusal to comply with some requirement of law.' It may be said to be a penalty imposed for misconduct or breach of duty, and in our criminal practice arises most frequently in proceedings upon bail bonds and recognizances, the terms of which have been violated. Measured by this definition, it is equally clear that the fund in dispute is not a forfeiture. Being neither a fine nor a forefeiture, and yet being attached to a judgment for a fine, how shall it be classed? Its definition determines its classification. It is a penalty or tax imposed by legislative enactment upon the unsuccessful litigant for having delayed the litigation, .and for having kept the successful litigant from sooner collecting his debt—a panacea, as it were, for the law's delay. It is not laid upon the litigant because of any wrong done, or duty violated, but for the sole purpose of preventing useless and frequently vexatious delays in the termination of litigation. Some means had to be adopted that would tend to put an end to useless appeals, which would more frequently than otherwise be brought for the purpose of delay and annoyance. To meet this necessity, the Legislature passed the act imposing upon the unsuccessful appellant from a judgment for the payment of money a penalty in the shape of damages, equal to 10 per cent. of the judgment appealed from."

A taxpayer who intentionally or unintentionally fails to pay his taxes when due has committed no criminal offense. The penalty provided for nonpayment of taxes when due is purely a civil obligation, remedial and coercive in its nature, that operates as a lien against the property. Certain statutory proceedings are provided, such as tax sales, and resales, to enforce the collection thereof. But under no circumstances does the failure to pay taxes when due forfeit the property to the state or to any person. The increased interest on delinquent taxes, known as a penalty, is far different from the penalty for a crime or a fine or forfeiture provided as punishment for the violation of criminal or penal laws.

In behalf of the power and authority of the Governor to remit the penalty on delinquent ad valorem taxes, plaintiff alludes to the history and background relating to the presence of section 3264 (O. S. 1931) in the various compilations of the statutes of this state. The section under consideration has metamorphosed from section 1 of an act of the First Legislature (Session Laws 1907-08, ch. 62, art. 1) entitled "An Act Relating to the Granting of Pardons: Creating a Board of Pardons and Defining Its Duties," the other sections appearing as sections 3265 to 3277, inclusive. The portion of said section providing that no pardons or paroles shall be granted by the Governor until he shall present the matter to and obtain the advice of the Board of Pardons and Paroles, as provided for in said act, was held unconstitutional by the Criminal Court of Appeals. Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549. The remainder of said section was brought forward into the Revised Laws of 1910, as section 4626. In the Compiled Oklahoma Statutes of 1921, all of said act was wholly omitted. The compilers of the Oklahoma Statutes of 1931 resurrected said provisions and placed them therein as sections 3264 to 3277, supra.

It is evident that said sections as originally enacted were dealing with violations of the criminal law and specific penalties and forfeitures such as may be found in sections 2241, 2249, 2314, and 2495, O. S. 1931, and other sections relating to the forfeiture of money, office, licenses, and rights. It is insisted by plaintiff that by virtue of the re-enactment of said section, as disclosed by the history thereof above set forth, the historical background of said section is not a proper criterion to gauge the meaning of the language used. But we cannot give our assent to this. It was one section of an act consisting of several sections, all relating to executive clemency for criminal offenses. When the Legislature used the language "to remit fines and forfeitures," it contemplated that certain definite fruits would result therefrom. It aimed at a certain definite defect which it, by said enactment, sought to remedy. By the mere process of transplantation, the fig tree which it sought to plant should not, by construction, bring forth thistles and thorns as its fruit. The intent of the Legislature in said enactment must be determined, if possible, and no greater nor less effect should be given to said act than was contemplated by the words used by the lawmakers. The language should not be isolated from its setting for the purpose of upholding this extraordinary power. Unless the Legislature intended to bestow upon the Chief Executive the right, by executive order, to supersede an enactment designed by it to require the prompt and punctual payment to the state and its municipalities of the tribute levied by the state as a necessary prerequisite to the maintenance of government, the language used should not be enlarged by this court to include such a far-reaching power. The results sought to be attained may be beneficent under certain conditions; but under other conditions an abuse of that

power could well lead to chaos and confusion in our fiscal and financial affairs. Such authority exercised in individual cases by the Chief Executive could well be subverted into a potent instrumentality for rewarding friends and purchasing favors from enemies, to the utter ruin of the state. If the Legislature had intended to grant this far-reaching power to the Chief Executive as a supplement to his power and authority granted by the Constitution in criminal cases, it could, and we believe would, have made its intention clear and positive, and there would be no necessity to resort to artful or strained construction.

The Legislature has on numerous occasions fixed an additional sum, which it has chosen to call a penalty, to attach to a tax for the failure to pay such tax on or before a certain stated time. It has from time to time changed the amount thereof, and has even enacted legislation purporting to remove said penalty and to absolve taxpayers from the payment thereof. It has been held that said additional sum constitutes no part of the tax, but is imposed by the sovereign power as an additional charge as punishment for delinquency and that the sovereign power may dispose of said penalty to the same extent as other fines and penalties arising from the violations of the other laws of the state or the failure to perform other duties. Board of Com'rs of Custer County v. City of Clinton, 49 Okla. 795, 154 P. 513. To the same general effect are the following cases: .Western Union Tele. Co. v. State, 146 Ind. 54, 44 N. E. 793; State v. Coos County, 115 Ore. 300, 237 P. 678; Jones v. Williams, Tax Collector. 121 Tex. 94, 42 S. W. (2d) 130.

We are not at variance with the holdings in these cases on this point. But we are of the opinion that in the enactment of the section of our law under consideration and the related sections, the Legislature was dealing with criminal proceedings, and while the penalty on taxes is in the nature of a fine or forfeiture, it does not partake of the criminal character under consideration by the Legislature. It partakes more of the characteristics of an added civil burden, such as an increased rate of interest after maturity and nonpayment of a promissory note, or of an acceleration of the maturity of an obligation, or of punitive or exemplary damages.

We have been cited to no case in which it has been held that the pardoning power was construed to authorize the Chief Executive to absolve a citizen from civil liability.

It was not intended by the Constitution nor by the enactment of the above-quoted statute to extend the power of the Chief Executive to such extent or to charge him with such responsibility. The power to grant clemency is not inherent in his office, but is derived from the Constitution and statutes. We find nothing in either which extends the pardoning power beyond the limits hereinabove suggested.

We are not herein called upon to determine whether or not the Legislature has the power asserted by it inferentially by the passage of the various acts to which allusion is made. We are concerned herein only with an executive order that purports to defeat the result of the enactment of the Legislature relating to this subject.

The judgment of the trial court is reversed and the cause remanded, with directions to dismiss the same.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, BAYLESS, BUSBY, and WELCH, JJ., concur. ANDREWS, J., concurring specially. McNEILL, J., dissents.

ANDREWS, J. (specially concurring). It is apparent that the Constitution does not confer upon the Governor of Oklahoma the power that the Governor of Oklahoma has attempted to exercise, but it is contended that the Legislature has conferred that power. If the Legislature so intended, its action, in my opinion, was prohibited by the provisions of section 53, article 5, of the Constitution. Therein it is provided:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation, or individual, to this state, or any county or other municipal corporation thereof."

The accrued penalties on taxes, in my opinion, belong to the holder of the tax sale certificate, if the tax sale certificate has been issued to an individual. If no such certificate has been issued, in my opinion, it comes within the meaning of the words "indebtedness, liabilities, or obligations," used in the constitutional provision quoted.

While the Legislature is not required to provide for tax penalties, and while it may repeal provisions of the law providing for tax penalties, in my opinion, it may not release or extinguish or authorize the releasing or extinguishing of accrued tax penalties.

McNEILL, J. (dissenting). I am unable

478

to agree with my associates on the question involved in this case. I cannot follow the judicial romancing through "fig trees," "thistles," and "thorns," and the abuse of executive power in "rewarding friends and purchasing favors from enemies to the utter ruin of the state." This court should not be concerned with the wisdom, propriety, or expediency of legislative enactments not denied by constitutional authority.

Article 6 of section 10 of the state Constitution provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon, granted, stating the name of the convict, the crime of which he was convicted, the date and place of conviction and the date of commutation, pardon, parole, or reprieve."

The Governor appears to have relied upon that section of the state Constitution for his power and authority to issue said order, which was prompted by stress of economic conditions confronting the people of this state. It was recited in said order that due to these conditions the regular tax was the limit of the ability of the people to pay and that all penalties, if exacted, would constitute excessive fines and cruel or unusual punishment.

However, counsel for plaintiff concede that said section 10 of article 6 of the Constitution does not vest the Governor with authority to issue an executive order of the instant character, but urge that the authority assigned in said executive order is immaterial, and that the Governor had the power and authority to issue said order to remit the tax penalties by virtue of section 3264, O. S. 1931, which is as follows:

"The Governor shall have the power to grant, after conviction, pardons and paroles for all offenses committed against the laws of this state, except cases of impeachment, and to remit fines and forfeitures, and he may commute death sentence of persons to imprisonment for life."

Counsel for plaintiff urge that said section of the statute supplemented or enlarged the constitutional powers of the Governor which had been granted to him under said section 10 of article 6, supra.

On the other hand, it is conceded by the county treasurer that said section of the Statutes, 3264, O. S. 1931, is not unconstitutional or invalid, but it is urged that said section, even though it is in full force and effect, yet it does not and never did authorize the Governor of this state to issue an executive order remitting tax penalties; that the Legislature did not have the right to pass a law expressing a different policy than that definitely expressed in said section 10 of article 6, supra; that the words "and to remit fines and forfeitures," as used in said section, were only used by the Legislature in prescribing the statutory regulations which it was authorized to prescribe for the granting of pardons and paroles under the provisions of said section 10 of article 6 of the state Constitution; that said section of the Statutes, being 4626, R. L. 1910, together with sections 4627 to 4639, inclusive, R. L. 1910, were repealed by implication and now improperly appear as sections 3264 to 3277, inclusive, O. S. 1931; that these sections have not since the effective date of chapter 217, Session Laws 1913, been treated as in force and effect; that said sections were not even included in C. O. S. 1921, and that said section 3264 did not enlarge the constitutional powers of the Governor.

To show the fallacy of said section being repealed by implication, I desire to trace the legislative history of said section.

Said section 3264 was first enacted as part of section 1, art. 1, chap. 62, Session Laws 1907-1908. The title to the act was as follows:

"An act relating to the granting of pardons; creating a board of pardons and defining its duties."

Section 1 of said act reads as follows:

"The Governor shall have the power to grant, after conviction, pardons and paroles for all offenses committed against the laws of this state, except cases of impeachment and to remit fines and forfeitures. No pardons, nor paroles, shall be granted by the Governor until he shall present the matter to and obtain the advice of the Board of Pardons and Paroles, but he may commute death sentence of persons to imprisonment for life."

On March 11, 1909, the Legislature provided for the appointment of a Code Commission. That act was entitled:

"An act to provide for compiling, collating, revising, digesting, suggesting additional legislation, adapting to the Constitution of the state the public laws of the state of Oklahoma, creating a commission to formulate a Code of Laws of the state of Oklahoma, defining their duties and providing for their compensation. * * *" (Laws 1909, c. 9, art. 1.)

On March 3, 1911, the Legislature passed

an act adopting the Revised Code of Laws prepared under the authority and by the direction of the Legislature by Samuel H. Harris and Jean P. Day, which Code is identified as volumes 1 and 2, entitled "Revised Laws of the State of Oklahoma 1910." That act was entitled as follows:

"An act to adopt a general code of laws for the state of Oklahoma; repealing all other general laws, excepting special local and appropriation acts, and saving all pending proceedings and existing rights and remedies." (Laws 1910-11, c. 39.)

The Harris-Day Code Commission incorporated all of said section 1 of the acts of 1907-1908 in the Harris-Day Code as section 4626 of the Revised Laws of 1910, after eliminating therefrom that portion of said act which had been declared unconstitutional in Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 349; said section 4626, R. L. 1910, being as follows:

"The Governor shall have the power to grant, after conviction, pardons and paroles for all offenses committed against the laws of this state, except cases of impeachment, **and to remit fines and forfeitures,** and he may commute death sentence of persons to imprisonment for life."

It is to be observed that said sections 4626, R. L. 1910, and 3264, O. S. 1931, contain the same identical language.

The Code Commission also made the following notation under said section 4626, vol. 1, p. 1185:

"History L. 1907-8, p. 576. Revision: Provision that no pardons or paroles shall be granted by the Governor until passed upon by the board eliminated, in accordance with decision holding such provision unconstitutional, as taking the pardoning power out of the hands of the Governor. (Sec. 10, art. 6, Const.) The remainder of the law is believed to be constitutional."

In 1915, the Legislature enacted Senate Bill 327, chapter 57, Session Laws 1915, being an act conferring upon the State Board of Public Affairs additional powers, duties, and authority, etc., and creating the office of Pardon and Parole Officer, etc., and abolishing the Board of Prison Control, and transferring certain of its duties to the State Board of Public Affairs. Under section 6 of said act, section 3279, O. S. 1931, it was provided as follows:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles and pardons for all offenses, except cases of impeachment, upon such conditions and such restrictions and limitations as he

may deem proper, subject, however, to the regulations hereinbefore prescribed."

This is the only legislative enactment dealing with the powers of the Governor to grant pardons and paroles since the adoption of the Harris-Day Code.

The Legislature adopted the Harris-Day Code on March 3, 1911. This Code had reincorporated therein said section 1, art. 1, chap. 62, of the Acts of 1907-1908, being 4626, R. L. 1910, with the part eliminated therefrom which provided that no parole should be granted by the Governor until he should obtain the advice of the Board of Pardons and Paroles and which the Criminal Court of Appeals, in Ex parte Ridley, supra, had declared unconstitutional. When the Legislature adopted said Code, then said section 4626, being 3264, O. S. 1931, by reason of its adoption, was given the full force and effect of a new enactment.

Under that section of Statutes the powers which were vested in the Governor under section 10, article 6, unquestionably were enlarged.

The Legislature was authorized under section 36, article 5, of the Constitution to authorize this enlarged power. Under that section of the Constitution the authority of the Legislature shall extend to all rightful subjects of legislation. Under section 10 of article 6, specific power had been vested in the Governor to grant, after conviction, pardons and paroles for all offenses committed against the laws of this state.

It seems to have been generally held by the courts of other jurisdictions at the time our Constitution was adopted that when the Chief Executive exercised a pardon after a conviction, the same operated as a remission of the fine which had been assessed as a part of the punishment. If that proposition is sound, there could have been no reason for the additional words in the act, "and to remit fines and forfeitures."

In the case of Roberts v. State (1899) 160 N. Y. 217, 54 N. E. 679, the Court of Appeals of New York said:

"* * * The effect of a pardon is to relieve the offender of all unenforced penalties annexed to the conviction. * * *"

In the case of Holliday v. The People (1848) 10 Ill. 214, there was a conviction of a criminal offense. A sentence of imprisonment and fine was imposed. Subsequently the offender was pardoned for the crime of which he stood convicted. After the pardon was granted an execution was issued to re-

cover the fine and costs. It was held that the prisoner was discharged from the fine, but not from the costs.

In Marriot's Case (1610) 78 English Reports, Full Reprint, vol. 78, page 108, it was said:

"Note: It was agreed in this case for law, that the sheriffe cannot collect fines, or issues after a generall pardon by Parliament; and therefore one Thorald the under sheriffe of N. who did so, was questioned and punished in the Star-Chamber."

See, also, Cope v. Commonwealth (1857), 28 Pa. 297.

In the light of these authorities it seems reasonable to conclude that if such implied power of remission of fines and penalties after conviction existed, there would have been no occasion or necessity for a legislative enactment upon that question. To confine the words, "and to remit fines and penalties," to offenses after conviction calls for a narrow and restrictive interpretation.

Nowhere does the majority opinion attempt to assign any judicial reason why the Legislature in its enactment of chapter 62, Session Laws 1907-1908, added the words, "and to remit fines and forfeitures." The fact is undisputed that the First Legislature did add those words in its enactment, which words were not contained in section 10 of article 6 of the state Constitution. It is observed that said section 3264 commences verbatim with the language of said Constitution, to wit: "The Governor shall have the power to grant, after conviction, pardons and paroles * * * committed against the laws of this state except cases of impeachment," and then by said legislative enactment there are added the words, "and to remit fines and forfeitures." There ought not to be sharp differences of opinion in the meaning and use of usual and ordinary words. After I read these statutory words in conjunction with the aforesaid section of the Constitution, it appears to me that there exists no delusiveness about an additional power, and that power is "and to remit fines and forfeitures." It seems clear to me that the limitation placed upon the Governor to grant pardons and paroles is after a conviction, but, as I view the immediate question, the pardon and parole feature is not involved herein. It is not the pardoning power with which we are dealing in the instant case, but it is the power of the Governor to remit fines and forfeitures.

The power to remit fines and forfeitures, in my opinion, does not have any reference to the words, "offenses committed against the laws of this state." Pardons and paroles for offenses "after convictions" have no concern with the power to remit fines and forfeitures. In fact, there is no limitation upon the power to remit fines and forfeitures in said section of the statute.

I conclude that there is further support in this thought by reason of the very next sentence in section 1 of the acts of 1907-1908, wherein it provides: "No pardons nor paroles shall be granted by the Governor until he shall present the matter to and obtain the advice of the Board of Pardons and Paroles." It is apparent that it was not intended by the Legislature to require or limit the power of the Governor to remit fines or forfeitures subject to the approval of the Board of Pardons and Paroles, but said section of the statute only required that pardons and paroles should be presented to that board.

It is my theory that said section 3264, supra, enlarged the power of the Governor granted to him under said section 10 of article 6, whereby he was given additional power or authority to remit fines and forfeitures without the limitation that such power should be exercised only after conviction, and that this power included the right to remit tax penalties. This enlarged power, as I interpret it, in no manner impinges any constitutional provision relating to the pardoning power of the Governor.

In 12 C. J. 749, it is said:

"The Legislature needs no specific constitutional authorization for its enactments, as all the legislative authority of the state which is not denied to the Legislature by the Constitution of the state resides in that body."

See, also, People v. Hale (Cal.) 222 P. 148.

Construing from my viewpoint that section 3264, supra, is in full force and effect, and that by virtue thereof the Governor of this state has been granted an additional power to remit fines and forfeitures without the restrictions or limitations that it be exercised only after conviction for all offenses committed against the laws of this state, except in cases of impeachment, it remains to be determined in this case whether the penalty arising from the failure to pay ad valorem taxes when due through neglect in violation of a public duty for which a penalty is assessed comes within the term of fines and forfeitures. A penalty imposed for a tax delinquency constitutes no part of the taxes. A tax is not a debt, and no one is

required to pay the penalty except through the failure on violation of a public duty to pay the taxes imposed by the taxing officials. The purpose is manifest. It aims to compel prompt obedience and compliance with the laws. Its object is to prevent tax delinquencies and to insure the prompt payment of the taxes. It is strictly and solely a creature of the statute, punitive in nature. It is not created by the levy of any tax and constitutes no part of the tax.

In the case of Western Union Tel. Co. v. State, 146 Ind. 54, 44 N. E. 793, the Supreme Court of Indiana said:

"No one need pay any penalty except through his own wrongful act. The government is in need of its revenues, and these revenues will be paid promptly by all good citizens. In case of failure to comply with such duty, such penalties will be imposed as will, in the judgment of the lawmaking power, best compel compliance with the law in each case, to the end that all the property owners of the state may bear their equal share of the public burden. Such penalties, as we have seen, are never imposed upon those that pay their taxes when due; the imposition of the penalty being an effort on the part of the lawmakers to compel good citizenship on the part of all taxpayers, that none may shirk the common duty."

In the case of State v. Coos County, 115 Ore. 300, 237 P. 678, the Supreme Court of Oregon said:

"We have heretofore held that the increased percentage and other burdens prescribed by the Legislature for nonpayment of taxes, are in the nature of penalties, and are not part of the taxes. Colby v. Medford, 85 Ore. 485, 527, 167 P. 487. They may have been prescribed as a means of inducing the taxpayers to pay promptly, but they are distinctive from the tax itself. Taxes are a contribution prescribed by the statute and levied by the authorities for the support of the government; and, as stated in State v. Galveston, etc., 100 Tex. 153, 97 S. W. 71, the penalties are somewhat in the nature of a fine upon a delinquent taxpayer for his delay in paying his taxes. They are not levied by the counties as part of the taxes, but are creatures of the statute, and what the statute has imposed by way of penalty, the statute can remit."

In the case of Jones v. Williams, Tax Collector, 45 S. W. (2d) 130, Chief Justice Cureton, speaking for the Supreme Court of Texas, in an exhaustive manner, discussed the question of the power of the Legislature to remit penalties imposed for tax delinquencies. In that case that court held that exactions of interest for failure to pay taxes, whether called "penalties," "interest," "for-feitures," or imposed without definition or name, were clearly distinguishable from and are no part of the tax proper, but are punitive in nature, and were "penalties" within legislative power of remission. All of the provisions of the Constitution of Texas, containing express limitations on the right of the Legislature to remit penalties, to wit, sections 51, 55, and 56 of article 3, and section 10 of article 8 of the 1876 Constitution of Texas, are cited and discussed. Section 56 of article 3 is as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * *

"Remitting fines, penalties and forfeitures and refunding moneys legally paid into the treasury."

A provision identical to this provision of the Constitution of Texas is found in section 46 of article 5 of the Oklahoma Constitution. Section 55 of article 3 of the Constitution of Texas is as follows:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing in whole or in part, the indebtedness, liability or obligation of any incorporation or individual to this state, or to any county, or other municipal corporation therein."

This provision of the Texas Constitution is identical with section 53 of article 5 of the Oklahoma Constitution. In discussing these constitutional provisions, the court says:

"The only express limitation on the right of the Legislature to remit penalties is that specified in section 56 of article 3, which prohibits the Legislature from 'remitting fines, penalties, and forfeitures by special law.' The necessary implication from the language used is that 'fines, penalties and forfeitures' may be remitted by general laws, such as the one before us. Day Land & Cattle Co. v. State, 68 Tex. 545, 546, 4 S. W. 865. Nor do we think that the Legislature is prohibited, either expressly or by necessary implication, by the language of any other section of the Constitution. If it be said that the provisions of sections 51 and 55 apply to penalties imposed for tax delinquency, then, for the same reason, we would be compelled to say they apply to all classes of penalties, and to fines and forfeitures as well. Such a construction would render meaningless the power clearly reserved to the Legislature by the terms of section 56 of article 3, to release 'fines, penalties and forfeitures' by general law. * * *

"Applying these rules, it is plain that sections 51 and 55 of article 3 cannot be construed to render nugatory the power to re-

mit fines, penalties, and forfeitures by general law. Our construction of the Constitution that the Legislature may remit accrued penalties by general law, notwithstanding sections 51 and 55 of article 3, and the equal taxation and other provisions of the Constitution, is consistent with the authorities generally in the jurisprudence of the United States. Cooley on Taxation (4th Ed.) vol. 3, sec. 1273; 37 Cyc. pp. 1542, 1543, 1545; 21 R. C. L. p. 210; 25 R. C. L. p. 943; 25 Corpus Juris, p. 1213; State v. Mitchell, 110 Tex. 498, 221 S. W. 925; State v. Humble Oil & Refining Co. (Tex. Civ. App.) 263 S. W. 319 (writ refused); Jessee v. De Shong (Tex. Civ. App.) 105 S. W. 1011; State v. Texas & N. O. Ry. Co., 58 Tex. Civ. App. 528, 125 S. W. 53 (writ refused); Goodrich v. Wallis (Tex. Civ. App.) 143 S. W. 285; Maryland v. B. & O. Ry. Co., 3 How. 534, 11 L. Ed. 714; U. S. v. Morris, 10 Wheat. 246, 6 L. Ed. 314; U. S. v. The Reform, 3 Wall. 617, 18 L. Ed. 105; Norris v. Crocker, 13 How. 438, 14 L. Ed. 210; Yeaton v. U. S., 5 Cranch, 281, 3 L. Ed. 101; Cleveland, C. C. & St. L. R. Co. v. Wells, 65 Ohio St. 313, 62 N. E. 332, 58 L. R. A. 651; Commonwealth v. Standard Oil Co., 101 Pa. 119, 150; State v. Coos County, 115 Or. 300, 237 P. 678; Livesay v. De Armond, 131 Or. 563, 284 P. 166, 68 A. L. R. 422; State v. Mayor, etc., of Jersey City, 37 N. J. Law, 39."

In the case of Board of County Commissioners of Custer County v. City of Clinton, 49 Okla. 795, 154 P. 513, this court considered an action brought by the city of Clinton against the board of county commissioners and the county treasurer seeking to recover certain sums alleged to be due the city as penalty upon said taxes. In that case this court held that the penalty was no part of the taxes, but that the penalty was created by the Legislature as an additional charge or punishment for delinquency on the part of taxpayers, and that the Legislature had a right to dispose of penalties in the same manner as it had the right to dispose of other fines and penalties arising from violation of other laws of the state. In that case Mr. Justice Hardy, delivering the opinion for the court, said:

"In this connection it is well to observe that the penalty is not properly a part of the tax, and that neither the city nor the county levy a penalty, but, on the contrary, the Legislature has exercised its sovereign power and imposed these penalties as an additional charge or punishment * * * in order to hasten the payment of the taxes due. The penalty is not created by the levy of the tax, nor has the Legislature authorized the city or the county to impose the same, and the fund being created by the Legislature, it follows that the Legislature has the right to dispose of said fund to the same extent as other fines and penalties arising from the

violation of other laws of the state or the failure to perform other duties. City of New Whatcom v. Roeder, 22 Wash. 570, 61 P. 767; Shultz v. Ritterbusch, County Treas., et al., 38 Okla. 478, 134 P. 961."

See, also, relative to the synonymous or convertible terms, forfeitures and penalties, the following cases: M., K. & T. R. Co. v. Dewey Portland Cement Co., 113 Okla. 142, 242 P. 257; McCullough v. Murphy, 125 F. 147; Southern Railway Co. v. Inman, 11 Ga. App. 564, 75 S. E. 908; Casey v. St. Louis Transit Co., 116 Mo. App. 235, 91 S. W. 419; Commonwealth v. French, 130 Ky. 744, 114 S. W. 255; Jagoe v. Aetna Life Ins. Co., 123 Ky. 510, 96 S. W. 598.

In the case of Cook v. Freeholders of Middlesex, 26 N. J. Law, 330, the Supreme Court of New Jersey considered an action which was brought to recover the sum of $1,000, being the amount of a fine inflicted upon plaintiff upon his conviction of a crime. The fine was paid by the plaintiff to the sheriff, and subsequently, in May, 1853, the money was paid by the sheriff to the county collector pursuant to requirements of the statute. Thereafter, in June, 1855, the Court of Pardons granted to said plaintiff a full and free pardon for the crime for which he was convicted, and also ordered that the fine of $1,000 which had been imposed upon him be remitted. The question involved a constitutional construction as to the import of the power conferred by the Constitution to remit fines and forfeitures.

In that case the court, in its discussion of the word "remit," said:

" 'To remit' is defined by our best lexicographers to be to forgive, to pardon, to release from punishment or penalty."

The court further said:

"The clause in the present Constitution authorizing the pardoning power to remit fines and forfeitures, as well as to grant pardons, does not by implication diminish or qualify the effect of a general pardon. Its design was, by express terms, to confer the power of remitting a part or the whole of the penalties consequent on conviction, of granting a partial or a full pardon, and also the power of remitting fines or forfeitures inflicted when there is no conviction of a crime, and consequently can be no pardon."

After a review of the legislative enactments, to wit, chapter 62, Session Laws 1907-1908; chapter 217, Session Laws of 1913; chapter 57, Session Laws 1915; chapter 34, Session Laws 1916; and chapter 66, Session Laws 1919, and the aforesaid section 10, article 6, of the state Constitution, I can see

no sound reason for confining the language of section 3264, to wit, "and to remit fines and forfeitures," to matters which strictly involve the granting of pardons and paroles after the commission of a crime. I am of the opinion that such language is entitled to a more liberal and broader interpretation so as to include the power to remit fines and forfeitures in those cases which do not involve conviction of a purely criminal offense as a basis for the exercise of the power for the remission of fines and forfeitures. Those specific words, "and to remit fines and forfeitures," are not contained in section 10, article 6. of the Constitution, and they do not qualify or limit the general power of pardon authorized by said section of the Constitution.

It may well be said that the design and express purpose of those words, "and to remit fines and forfeitures," have a proper application in a case where there has been no conviction of a crime, and consequently where there can be no pardon of a crime. In that way a full and complete meaning, force, and effect may be given to those words without strictly confining their meaning and application to those cases dependent upon conviction for a criminal offense. As I view the immediate question, I conclude that said section 3264 was sufficient authority for the execution of the executive order in question. and that said section granted to the Governor additional power to remit fines and forfeitures, and that this power included the authority to remit penalties assessed for the failure to pay ad valorem taxes when due.

For these reasons, I dissent.