## CITY OF McALESTER v. JONES, County Treasurer.

No. 26722.   March 2, 1937.

Rehearing Denied May 25, 1937.

Second Petition for Rehearing Denied Oct. 19, 1937.

78

Horton & Horton and Cornish & Cornish, for plaintiff in error.

W. J. Counts, County Atty., Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendant in error.

C. E. Hall, amicus curiae.

OSBORN, C. J. This action was instituted in the district court of Pittsburg county by the city of McAlester, hereinafter referred to as plaintiff, against the county treasurer, hereinafter referred to as defendant, wherein it was sought by mandamus to compel payment to plaintiff of certain funds which had been collected as penalties on ad valorem taxes paid on property located within the corporate limits of the city. The writ was refused by the trial court, and plaintiff has appealed.

The county treasurer, from July to December, 1934, and during January and the first eight days of February, 1935, had collected the sum of $3,885.71, as penalties on delinquent taxes on property located within the corporate limits of the city of McAlester. Upon his refusal to pay said funds to the city, this action was instituted.

Section 4623, C. O. S. 1921, as amended by section 36, chapter 173, Session Laws 1923 (sec. 6247, O. S. 1931), provides:

"All penalties for delinquent taxes, including penalties on special assessments and the interest on bonds for paving or other special assessment bonds, over and above the amount specified in the face thereof, shall be and become the property of the city and shall be collected by the county treasurer, it being the intent of this provision to have such penalties go to the street repair fund of cities of the first class. All other penalties for delinquent taxes upon property situated within the corporate limits of any city of the first class, except where the same may have been bid in by some individual person or corporation, shall also go into the city street repair fund of cities of the first class and shall be used solely for the purpose of repairing and reconstructing streets and alleys which have heretofore been paved or macadamized."

See, also, section 6249, O. S. 1931.

By way of defense, it was alleged that the mayor and council of the city of McAlester had passed a resolution authorizing the county treasurer to hold said fund in a special account subject to the action of the Legislature, and in the event said penalties were remitted by the Legislature, that the impounded funds be returned to the taxpayers. Article 15, chapter 66, Session Laws 1935, became effective February 8, 1935. Said act provided that all penalties, interest, and costs which had accrued on unpaid ad valorem taxes and special assessments for 1934 and prior years should be waived, released, and canceled, in the event the taxes levied and assessed were paid on or before certain dates specified in the act. Section 9 of the act provides as follows:

"Section 9. All penalties, interest and costs that have accrued on 1933 and prior ad valorem taxes on real and personal property in this state, and which during the three-year period next preceding the effective date of this act were collected by any county treasurer of this state along with the principal amount of said ad valorem taxes, but which penalties, interest and costs were placed by said county treasurer in a special fund in the county treasury and which are now held in said fund, shall be considered to be held in trust for the benefit of the party paying the tax, and shall, upon the presentation of a sworn claim therefor by said party paying the tax, be rebated and paid by the issuance of a cash voucher of the county treasurer drawn against said fund."

The above act is one of a series of acts which provide for the waiver and cancellation of penalties on delinquent taxes which were no doubt occasioned by the economic conditions generally prevailing in this state for the past several years. Chapter 1, Session Laws 1933, became effective February 11, 1933, and provided for the waiver and release of penalties on delinquent ad valorem taxes, provided that taxes were paid on or before December 1, 1933. On January 15,

1934, the Honorable Wm. H. Murray, Governor, issued an executive order whereby it was attempted to remit and commute penalties on delinquent taxes, provided the taxes were paid prior to July 1, 1934. In the case of Holliman v. Cole, 168 Okla. 473, 34 P. (2d) 597, it was held that the Governor was without authority to remit penalties on delinquent taxes and that the executive order was without effect.

It is stated in the briefs that after the effective date of the opinion a number of the county treasurers in the state, in anticipation of action by the Legislature at the next forthcoming session, impounded the penalties collected in a special fund so that in the event of a grant of authority from the Legislature, said penalties might be returned to the taxpayers; that this situation came to the attention of the Legislature and prompted the enactment of section 9, supra.

It is the contention of plaintiff that section 9, supra, is unconstitutional. We are referred to section 53, art. 5, prohibiting the releasing or extinguishing, in whole or in part, of the indebtedness, liabilities, or obligations of any corporation, or individual, to this state or any county or other municipal corporation thereof; section 54, art. 5, providing that the repeal of a statute shall not affect any accrued right or penalty incurred; section 46 (t) art. 5, prohibiting the passage of any local or special law remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury.

Neither section 9, supra, nor any other portion of the act may be considered as a local or special law within the meaning of that term as used in the Constitution, for the reason that the act applies to all persons of a designated class throughout the state. City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640; Gable v. Childers, 176 Okla. 360, 56 P. (2d) 357.

The fact that the makers of the Constitution prohibited the remission of fines, penalties, and forfeitures by local or special law gives rise to the implication that general laws on that subject are not prohibited by the Constitution. Such was the viewpoint adopted by the Supreme Court of Missouri in the case of State v. Koeln, 332 Mo. 1229, 61 S. W. (2d) 750; by the Supreme Court of Texas in the case of Jones v. Williams, 45 S. W. (2d) 130, 79 A. L. R. 983; by the Supreme Court of Arizona in the case of Biles v. Robey, 30 P. (2d) 841. The applicable constitutional provisions considered by the courts in these cases are practically identical with our own. Other cases involving the

constitutionality of legislative acts remitting penalties, fines, and costs are collected in notes 68 A. L. R. 431, 79 A. L. R. 999. By the great weight of authority these acts are constitutional and valid.

Plaintiff argues that these authorities are not applicable here, since the tax penalties, upon payment of the county treasurer, immediately became the property of the plaintiff, and that the Legislature was without authority to take such property away from the city or otherwise deprive it of its vested right thereto.

It does not appear that any of the funds involved herein had been appropriated to any municipal purpose or were involved in any contract between the municipality and any other person. We agree with plaintiff that if this action had been instituted prior to the effective date of the act, it would have been entitled to prevail, but said action was not commenced until June 28, 1935, more than four months after the act became effective. Our inquiry must now be confined to constitutional issues. If the act does not contravene some provision of the Constitution, it is valid. The lawmaking power of the Legislature is supreme within its proper sphere, qualified only by the restrictions and limitations imposed by state and federal Constitutions. Herndon v. Anderson, 165 Okla. 104, 25 P. (2d) 326.

In the case of Estus v. State ex rel. Dinwiddie, 83 Okla. 181, 200 P. 1002, it was held:

"The penalty upon delinquent taxes is not a part of the tax, but the Legislature has exercised its sovereign power and imposed this penalty as an additional charge or penalty for delinquency upon the part of the taxpayers in order to hasten the payment of taxes due. The penalty is not created by a levy of the tax, and the fund being created by the Legislature, it follows that the Legislature has a right to dispose of such funds to the same effect as other fines and penalties and as other funds of the state."

In the case of City of Guthrie v. Board of Com'rs of Logan County, 105 Okla. 237, 232 P. 22, it is said:

"* * * The question of law involved in this case, with reference to the right of the city to the penalties upon taxes, has been determined in the case of George K. Hunter, County Treasurer, v. State ex rel. City of Shawnee, 49 Okla. 672, 154 P. 545, and the same rule has been reaffirmed by this court in the case of Board of County Commissioners of Custer County et al. v. City of Clinton, 49 Okla. 795, 154 P. 513, wherein it was held that the city was not entitled to appropriate the penalties, under section 3, art.

9, ch. 32, S. L. 1897, which is section 8575, Comp. Stat. 1921, which provides that all interest, penalties, and forfeitures upon delinquent taxes should be paid into the county sinking fund, and this was the law of the state until the act of 1919, section 4623, Comp. Stat. 1921, wherein it was provided that penalties for delinquent taxes become the property of the city, and should be paid into the street repair fund of cities of the first class. And as stated in the case of Custer County v. City of Clinton, supra:

" 'The penalty is not created by the levy of the tax, nor has the Legislature authorized the city or the county to impose the same, and the fund being created by the Legislature, it follows that the Legislature has the right to dispose of said fund to the same extent as other fines and penalties arising from the violation of other laws of the state or the failure to perform other duties.' —Citing the cases of New Whatcom v. Roeder, 22 Wash. 570, 61 P. 767; Schultz v. Ritterbusch, County Treas., et al., 38 Okla. 478, 134 P. 961. And in Cooley on Taxation, vol. 4 (4th Ed.) art. 1821, page 3573, there will be found a discussion of the subject, and in the case of Board of County Commissioners of Sedgwick County v. City of Wichita (Kan.) 64 P. 621. From an examination of these authorities it is disclosed that the right to assess penalties for delinquent taxes is a power which is lodged in the Legislature of the state, and that it being the creative power, it necessarily is the proper tribunal to make disposition of penalties or funds created thereby."

In the light of the foregoing authorities, it appears that the Legislature is invested with power and authority to impose, release, remit, and distribute the penalties on delinquent taxes. In the absence of intervening contractual rights, there appears to be no constitutional limitation upon the Legislature to change the manner of distribution of funds arising from the imposition of such penalties to any proper public purpose. Prior to the enactment of chapter 48, S. L. 1919, the cities had no claim upon any portion of the funds so derived. By the enactment of section 4 of that act, and subsequent amendments thereto, the Legislature, in the exercise of its discretion, distributed certain penalties to the cities and provided for the manner of expenditure thereof. Plaintiff contends that the county treasurers were thereby made the trustee of said funds for the use and benefit of the cities. By the provisions of section 9, art. 15, ch. 66, Session Laws 1935, the Legislature, in the exercise of its discretion, specifically provided that certain specified penalties, interest, and costs held by certain county treasurers "shall be considered to be held in trust for the benefit of the party paying the tax," to be "rebated and paid by the issuance of a cash voucher of the county treasurer drawn against said fund." In so far as there is conflict between the acts, the latter controls.

A problem similar to that presented here was before the Supreme Court of Ohio in the case of City of Cleveland v. Zangerle, 127 Ohio St. 91, 186 N. E. 805. It appears that the Legislature of Ohio had enacted a revenue measure known as the Intangible Tax Act, which was passed on June 11, 1931, and provided for the apportionment of the taxes accrued thereunder to certain subdivisions of the state. On March 22, 1933, Amended Senate Bill No. 239 was passed, which provided a different manner of apportionment of the funds accrued under the original act. At the time the latter bill became effective the funds were in part collected and in part in the process of collection and undistributed. In that case the city of Cleveland presented an argument quite similar to the argument presented by plaintiff in this case regarding the vested rights of the city. In answering the contention thus made, the court said:

"No governmental subdivision of the state has any vested right, at least until distribution is made, in any taxes levied and in the process of collection. Until such distribution is made, the Legislature of Ohio is fully competent to divert the proceeds among those local subdivisions as it deems best to meet the emergencies which it finds to exist. So far as any political subdivision of the state is concerned, there can be no vested right, although a case might arise where private interests might intervene and be so affected as to give rise to a vested interest. The provisions of Amended Senate Bill No. 239, so far as they relate to the future distribution of the proceeds of the taxes, are not retroactive, but prospective, in character, and it is not violative of section 28, article 2, of the Constitution; nor can it be said that the city had any contractual obligation with the state which was impaired by the passage of Amended Senate Bill No. 239."

It is only where an act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such an act invalid and void. Grable v. Childers, supra.

We have carefully considered the argument and authorities submitted by plaintiff, and are of the opinion that there is no constitutional inhibition upon the power of

the Legislature to direct the refund of the penalties herein involved to the taxpayers.

The judgment is affirmed.

BAYLESS, V. C. J., and BUSBY, WELCH, PHELPS, CORN, GIBSON, and HURST, JJ., concur. RILEY, J., dissents.