## CITY OF ARDMORE v. EXCISE BOARD OF CARTER COUNTY et al.

No. 33450. June 29, 1948.

Rehearing Denied Sept. 28, 1948.

*197 P. 2d 961.*

J. B. Moore, of Ardmore, for plaintiff in error.

Alvin C. Bruce, Co. Atty., and Joseph M. Culp, Asst. Co. Atty., both of Ardmore, for defendants in error.

CORN, J. Plaintiff, city of Ardmore, appeals from a judgment denying relief in an action brought against defendants, members of the Carter county excise board, for writ of mandamus to compel the board to apportion to the city a part of the annual ad valorem tax levy.

Plaintiff alleged that September 10, 1947, the board met and made the following apportionment: seven mills to the county, seven mills to schools, one mill to the city; that thereafter, September 12, 1947, the board met without further notice, and attempted to rescind the former order, and made the following allocation: eight mills to the county, seven mills to schools, no mills to the city. Plaintiff further alleged the 1943 Legislature passed an act, which appears as 8 O. S. Supp. 1943 §44a, by which an apportionment of one-half mill was made, to be levied for cemetery purposes when requested by the city, and it was the mandatory duty of the board to make this allocation.

It is plaintiff's position that the board's action was in violation of Section 9, art. 10, of the Constitution, as amended in 1933, which provision makes it mandatory upon the board to allocate to the city a portion of the tax levy, and the board's action in refusing to do this was arbitrary and contrary to law, and that plaintiff was without any adequate remedy at law.

An alternative writ of mandamus issued and defendants filed return of the writ, alleging that section 9 of article 10, supra, does not require apportionment of any portion of the 15 mill levy to each of the three subdivisions of government, and particularly the city, irrespective of need. Further, that 8 O. S. Supp. 1943 §44a did not make it mandatory upon the excise board to apportion not to exceed one-half mill for cemetery purposes where, as in the present case, an equal sum was available from other sources for such purpose.

Since we are confronted with purely legal questions, an extended recitation of the evidence is unnecessary. It was shown that the board met September 10th, and tentatively made the first apportionment (1 mill to the city). The auditor was not present and this allocation was based upon an erroneous calculation in the budget figures. The total requests were far in excess of the 15 mills to be apportioned and when the board met the second time, September 12th, the error was discovered and the board rescinded its former action, determined what requests could be satisfied and entered the order of which plaintiff complains. After hearing the evidence the trial court rendered judgment for defendants, rescinding the alternative writ of mandamus (which had directed the board to put into force the original order of September 10th).

In seeking reversal of this judgment plaintiff urges three propositions. It is contended that the excise board was without authority to make the allocation of September 12th, conflicting with the allocation of September 10th.

After making the first allocation the excise board recessed. The board thereafter met again and determined the allocation had been made upon the basis of erroneous calculations, reconsidered the matter and made the new allocation. No levies or appropriations had been certified and no budgets had been filed as required by statute.

We are of the opinion that the apportionment made by the board on September 10th was not final and irrevocable, and the board was acting within its authority when it again met prior to certification of the levies and appropriations and saw fit to correct or change the allocation theretofore entered.

Plaintiff next contends that section 9, art. 10, as amended in 1933, makes it mandatory upon the excise board to apportion the 15-mill levy between the three subdivisions of government, and when a necessity for allocation is shown by the estimate and request by any one of such subdivisions, then some part of the taxes must be apportioned to such subdivision of government.

Upon trial of this cause plaintiff contended that under the constitutional provision the excise board was required to apportion some part of the 15 mills annual levy to the city. The constitutional provision as amended by vote of the people in 1933, section 9, art. 10, provides:

"Except as herein otherwise provided, the total taxes for all purposes, on an ad valorem basis, shall not exceed in any taxable year, fifteen (15) mills on the dollar, to be apportioned between the county, city, town and school district, by the County Excise Board, until such time as the regular apportionment is otherwise provided for by the Legislature."

In deciding the present case the trial court based his decision upon our holding in State ex rel. City of Mangum v. Greer et al., 188 Okla. 504, 111 P. 2d 178, wherein essentially this same question was before us for decision. Therein we held, in paragraph 1 of the syllabus, as follows:

"Section 9, article 10, of the Constitution, as amended in 1933, does not require the excise board to apportion some part of the 15 mill limit of levy to each of the three subdivisions of government enumerated therein, irrespective of the relative needs thereof."

We perceive no difference in the present situation necessitating a different rule, requiring that the excise board allocate to any of the specified subdivisions of government any portion of the annual ad valorem tax levy. Although the equities of this situation may be said to exist in favor of the city, nevertheless, as stated in the Greer case, supra, "We are convinced of our lack of power to arbitrarily fix the proportion in this or any other case . . . ."

518

It is finally contended by plaintiff that by reason of 8 O.S. Supp. 1943 §44a, the excise board was bound to allocate to the city not to exceed one-half mill for cemetery purposes. This section of the statute provides as follows:

"Any City or town owning and controlling any lands, lots or parcels of grounds used for cemetery purposes is hereby authorized to construct, improve, beautify and maintain the same by an ad valorem tax levy or income from other sources for the use and benefit of the inhabitants of any such city or town controlling the same; and the governing body of such city or town is hereby authorized at its option to request an additional levy of not to exceed one-half (1-2) mill for cemetery purposes upon all property, both real and personal, within the corporate limits of such city, town or village, subject to taxation on ad valorem basis, which said levy is hereby declared not to be a current expense and to be for a special purpose known as the 'Cemetery Fund,' and in addition to such other levy as may be made for current expenses as now provided by law; said additional levy when made and collected shall be credited to the Cemetery Fund of said municipality and shall be used for the purpose of beautifying, caring for, and upkeep of all such land and premises so held and owned by such city, town or village for cemetery purposes. It is hereby made the mandatory duty of the county excise board of each county in the State to make said ad valorem tax levy not to exceed one-half (1-2) mill or to provide a sum equal to said one-half (1-2) mill from other sources when the governing body of any city or town at its option makes request therefor. Laws 1941, p. 17, §1, as amended Laws 1943, p. 20, §1."

The constitutional provision (section 9, art. 10, as amended in 1933) prescribes the total limit of taxes for all purposes. It likewise permits the Legislature to apportion this total (15 mills) in any manner it may deem proper or necessary. But, it is further provided that, until the Legislature sees fit to act in this respect, the county excise board has full authority to act in carrying out the function given to the Legislature by the amendment.

Assuming for purposes of discussion that the Legislature had apportioned the entire 15 mills, it could not be contended seriously that by such action the Legislature had brought an end to the need or necessity for the existence of the excise board, since it is apparent the board has a further function to perform, to wit, levy the taxes which are to be raised, by levy upon the property valuation, to meet the apportionment theretofore made by the Legislature.

From this it is to be seen that the excise board in reality performs a dual function: First, acting in the capacity of the Legislature, it has full and complete authority to apportion the total taxes for all purposes as it may see fit, so long as it does not act arbitrarily or capriciously. Second, having performed this duty, the board next must levy such taxes as will return those amounts already apportioned to the different subdivisions of government.

It is indisputable that the Legislature, by failure to act as regards apportionment of the 15-mill total limit of levy, has delegated to the excise board full authority to act as it sees fit. Likewise, it is indisputable that, if the Legislature chose to make an apportionment of the total limit of levy authorized by the constitutional amendment, in no event could such apportionment exceed the 15-mill total.

The act in question (8 O. S. Supp. §44a) was passed and became effective in 1943. Consideration of the language used reveals that the levy therein provided is expressly declared not to be a current expense, but for a special purpose, levied in addition to the other levies for current expenses provided by law.

At the time of passage of this act the provisions of section 9, art. 10, of the Constitution, as amended, provided

the complete authority for levying the 15-mill limit of levy for current expenses of government. Further, the current expenses for which the amendment provided were limited expressly to a total of 15 mills. In view of the limitation upon the total levy, and considering that the excise board had full authority to apportion this amount of levy as it saw fit, it follows that the effect of section 44a was to require the levy of an additional one-half mill for cemetery purposes over and above the legal limit provided for current expenses under the law (constitutional provision) existing at the time this act was passed.

Consideration of section 9, of article 10, as amended, reveals that the levy provided in section 44a does not fall within any of the exceptions to the 15-mill legal limit of levy therein provided. With this in mind it is obvious that the only interpretation which can be given to this section is, that by its provisions it undertakes to raise the legal limit of ad valorem taxation in cities coming within its purview from 15 mills to 15½ mills.

We are cognizant of the established rule of statutory construction, that a statute will not be declared unconstitutional or invalidated by this court unless clearly, palpably, and plainly inconsistent with constitutional provisions. City of McAlester v. Jones, 181 Okla. 77, 72 P. 2d 371; Standard Company Dairy v. Allen, 188 Okla. 287, 108 P. 2d 164; Hazel-Atlas Glass Co. v. Walker, 195 Okla. 470; 158 P. 2d 268.

To uphold this act it would be necessary to construe the language therein appearing as meaning that although the levy for cemetery purposes is expressly declared not to be a **current expense,** that nonetheless it was the Legislature's intention to provide that such levy was to be considered as one of the usual and necessary current expenses of government, to be included within the 15-mill limit of levy.

We are of the opinion that it is impossible to uphold the validity of this act by any means other than reading into the language of the act itself a meaning which does not readily appear from the language used. In such instances, the act cannot stand, since it is clearly and plainly inconsistent with constitutional provisions. Had the Legislature intended the language of this act to work an apportionment of a part of the limit of levy to cities and towns, then more appropriate language would have been used.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and WELCH and LUTTRELL, JJ., concur. GIBSON, J., dissents.

———

GIBSON, J. (dissenting). I think the writ should be withheld for if it should be issued at this time it would seriously disturb the fiscal affairs of Carter county. It is impractical to issue it now. Board of Education of City of Guthrie v. Excise Board of Logan Co., 86 Okla. 24, 206 P. 517.

I think, however, that the excise board of Carter county should have made the appropriation for cemetery purposes requested by the city of Ardmore. I am of the opinion that 8 O. S. 1943 Supp. §44a is a legislative apportionment of one-half mill on the dollar out of the fifteen (15) mills on the dollar total taxes for all purposes on an ad valorem basis which is provided for by section 9, art. 10, Constitution, as amended in 1933.

It is a legislative apportionment of a part of the maximum 15 mills as much as is 68 O. S. 1941 §281a, wherein the Legislature has apportioned to each and every school district of the state a minimum of "five (5) mills on the dollar out of the fifteen (15) mills on the dollar total taxes for all purposes on an ad valorem basis of Section 9, Article 10, of the Constitution of the State of Oklahoma, as amended in 1933." There is no substantial difference between the two partial appor-

tionments of the 15 mills maximum. The Legislature has made an unconditional apportionment of 5 mills out of the 15 mills maximum to the schools, and has made an apportionment of one-half mill out of the 15 mills maximum for city cemetery purposes, conditioned only that the city shall file its request for an appropriation within such one-half mill apportionment. In my opinion the Legislature has taken cognizance of the practice of many county excise boards of devoting the whole of the 15 mills which may be levied under the Constitution, as amended, to county and school purposes, thus leaving the cities and towns to their own devices for raising revenue to finance the needs of their general fund, including the cost of operating the police and fire departments, the sanitary department, the maintenance of public cemeteries, and various other governmental functions.

I think the Legislature has in effect declared it to be the public policy of this state that a part of the money raised from taxes imposed on city property should be used for the upkeep and maintenance of the public cemeteries of the cities.

I do not think it was the intention of the Legislature to provide it to be the mandatory duty of the excise board to make the cemetery levy, upon the city's request, and then leave it to the whim of such excise board to make an apportionment of the 15 mills total so that the one-half mill levy could be legally made.

I cannot agree with the majority opinion in holding that the Legislature has attempted to exceed the 15 mills maximum limit of ad valorem levy provided by the Constitution, in providing for the cemetery levy. That is to charge the Legislature with ignorance of the Constitution or a disregard of it.

A city, like a county or school district, has two funds out of which its needs are paid for — general and sinking. Through the sinking fund its needs for judgment and bond indebtedness are financed. Through the general fund levies all of its needs for the current fiscal year must be provided for. Within the general fund many items of appropriations are included. These items show the current needs for general city government and also the special purpose needs. With these simple basic facts in mind, the intention of the Legislature in providing for the cemetery levy is obvious, and it is equally obvious that the majority opinion misconstrues the act. All of the items appropriated for through the general fund are for needs for the current year and consequently are current expense items. But an appropriation for a special purpose, although included as a current expense item in the general fund, can be used for no other purpose.

Unexpired balances of appropriations for current needs of general government may be re-appropriated under the statutes.

It is apparent to me that the Legislature intended to make it possible to create a special fund within the general fund in addition to the other items of current expense which might be appropriated for in the general fund. The majority opinion seems to hold that the excise board still possesses all of the uncontrolled discretion in the apportionment of the 15 mills conferred upon it by section 9, art. 10, Constitution, as amended in 1933. Since that time the Legislature has apportioned 5 mills to the schools and one-half mill to the cities and towns for their public cemeteries. There may be others, but, if not, it is evident that the excise board can now apportion a maximum of $9\frac{1}{2}$ mills to a county for its current expense, if it should see fit to give all of the available millage for that purpose.

The question presented here is in no manner controlled by our holding in State ex rel. City of Mangum v. Greer et al., 188 Okla. 504, 111 P. 2d 178.

I agree that the writ should be denied, but not for the reasons stated in the majority opinion.