## BOARD OF COM'RS OF TULSA COUNTY v. OKLAHOMA TAX COMMISSION (CITY OF TULSA et al., Interveners).

No. 34334. Nov. 29, 1949.
Rehearing Denied Dec. 16, 1949.

*212 P. 2d 462.*

Elmer W. Adams, Co. Atty., of Tulsa County, and Hugh Webster, Asst. Co. Atty., both of Tulsa, for plaintiff.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for defendant Dan A. Rowe, County Treasurer.

R. F. Barry, of Oklahoma City, for defendant Oklahoma Tax Commission.

A. L. Jeffrey, Municipal Counselor, and Arthur Leach, Asst. Municipal Counselor, both of Oklahoma City, for defendant and intervener City of Oklahoma City.

R. L. Davidson, Jr., City Attorney, of Tulsa, for intervener City of Tulsa.

Owen Vaughn, City Attorney, of Chickasha, for intervener City of Chickasha.

Harold L. Gasaway, City Attorney, of Enid, for intervener City of Enid.

William S. Hamilton, City Attorney, of Pawhuska, for intervener City of Pawhuska.

Robert J. Bell, City Attorney, of McAlester, for intervener City of McAlester.

Julian B. Fite, City Attorney, of Muskogee, for intervener City of Muskogee.

GIBSON, J. This is an original proceeding instituted in this court by the relator, board of county commissioners of Tulsa county, for itself and all other counties similarly situated, to enjoin the Oklahoma Tax Commission and Dan A. Rowe, county treasurer of Tulsa county, from allocating and distributing moneys under authority of section 6 of article 20, Title 70, House Bill 120 of the Twenty-Second Legislature (S. L. 1949, pp. 517, 604), and House Bill 430 of the same session. As grounds for the relief it is urged that House Bill 120 in respect thereto is unconstitutional for the reasons (1) the Act is so vague, indefinite and uncertain that the intent thereof cannot be determined by the court; (2) the population classification which is made the basis of allocation is capricious and arbitrary,

and (3) the provision thereof is not germane to the subject-matter of the Act and therefore violative of section 57, art. 5 of the Constitution. And that section 1 of chapter 1a, Title 47, House Bill 430 (S. L. 1949, p. 313), which purports by way of amendment of the existing law to make a provision similar to that made in House Bill 120, which is the subject of attack, is void because it is violative of said section 57, art. 5.

Being of the opinion that both of the House Bills, in the respect involved herein, are violative of mandatory provisions of section 57, art. 5 of the Constitution, there is no occasion to consider the other grounds which involve a construction of the provisions of the amendments.

In 1941 (S. L. 1941, p. 174 et seq.) there was enacted "Motor Vehicle License and Registration Act", providing through the office of the Oklahoma Tax Commission for the registration and licensing of motor vehicles and the apportionment of the license fees, taxes and penalties collected or received by the Commission. The allocations thereunder and the amendments thereto are reflected in Tit. 47 O. S. 1941 §22.2, and supplements. Subdivision (a) thereof provides that 5% of all collections and receipts be deposited to the Commission's credit with the State Treasurer and be devoted to payment of the expense of the Commission incurred in the performance of its duties under the ·Act. Subdivision (b) provides as follows:

"(b) The remaining ninety-five per cent (95%) of all license fees and penalties collected or received by the Commission from the registration of trucks used exclusively for 'farm use' and for which farm truck tags are issued, and automobiles, pursuant to this Act, shall be apportioned monthly to the county in which the money was collected, for the use and support of the common schools of the county. Such money shall be remitted to the County Treasurer and by him apportioned, on average

daily attendance per capita distribution basis, as certified to him by the County Superintendent, to the school districts of the county where such pupils attend school; provided, the majority school district makes an ad valorem tax levy of fifteen (15) mills, and the separate schools of a county make an ad valorem tax levy of at least one and five-tenths (1.5) mills, for the current school year, and had an average daily attendance of thirteen (13) or more pupils during the next preceding year."

Subdivision (c) appertains solely to the basis on which school districts may make estimates for the ensuing year. Subdivisions (d) and (e) are as follows:

"(d) From the remaining total amount collected from all other sources seventy-five per cent (75%) shall be allocated to the various counties of the State in the following manner: Forty per cent (40%) of such sum shall be distributed to the various counties in that proportion which the county road mileage of each county bears to the entire state road mileage as certified by the State Highway Commission, and the remaining sixty per cent (60%) of such sum shall be distributed to the various counties on the basis which the population and area of each county bears to the total population and area of the State. Such sums as may be due the various counties of the State shall be remitted to the respective county treasurers monthly and shall be used for the construction, improvement or repair of highways, except that the county treasurer shall deposit so much of said money in the sinking fund as may be necessary for the retirement of interest and annual accrual of indebtedness created by the issuance of county or township bonds for road purposes, but not to exceed forty per cent (40%) of such moneys shall be so used. Moneys allocated to counties hereunder may be set up and estimated by the county excise board in the budget for the county as anticipated revenue to the extent of ninety per cent (90%) of the previous year's income from such source, provided that not more than fifteen per cent (15%) can be encumbered during any one month.

"(e) Twenty-five per cent (25%) shall be distributed to the various county treasurers of the State for allocation to the cities and incorporated towns; said twenty-five per cent (25%) to be apportioned to the county treasurers in the proportion which each county's population bears to the population of the State and shall be allocated to the cities and incorporated towns of each such county in that proportion which the population of the cities and incorporated towns bears to the total city and incorporated town population of the county.

"All moneys allocated to the cities and incorporated towns shall be used for the construction, maintenance, repair, improvement and lighting of streets and alleys. Provided, however, that the governing board of any city or town in the respective counties of the State may, with the approval of the County Excise Board, transfer any surplus in the street and alley fund created by this Act to the general revenue fund of said city or town whenever any emergency exists in the general revenue fund of any city or town. Laws 1941, p. 176, sec. 3, as amended Laws 1943, p. 117, sec. 1; Laws 1945, p. 144, sec. 1; Laws 1947, p. 494, art I, sec. 1."

House Bill 120, which carries an emergency clause, was approved June 7, 1949, and is entitled An Act relating to the public schools of Oklahoma and as "establishing a code for the public school system of the State." In the title there are set out divers powers to be enacted and laws that are to be repealed or amended. The recital therein that is pertinent here is as follows: "dealing with distribution of automobile license and farm truck tax and gross production tax; amending 47 Oklahoma Statutes 1941 §22.2, as amended."

In section 6, art. 20 of the Act, there is declared:

"Section 22.2, Title 47, Oklahoma Statutes 1941, as amended by Section 1, Chapter 1b, Title 47, Oklahoma Session Laws 1943, as amended by Section 1, Chapter 1, Title 47, Oklahoma Ses-

sion Laws 1945, as amended by Section 1, Article 1, Chapter 21, Title 70, Oklahoma Session Laws 1947, as amended by Section 1 of House Bill 430 of the regular session of the Twenty-second Oklahoma Legislature, is hereby amended to read as follows:"

Continuing, there is incorporated in extenso all of section 22.2 without change except as follows: subdivision (b) is amended by increasing the amounts of the mill levies from 15 and 1.5 to 20 and 3, respectively, and adding a further condition concerning years of instruction. Following the first paragraph of subdivision (e) there is incorporated the following:

"Provided further that in counties having one (1) or more cities which have a population of one hundred thousand (100,000) or more as shown by the last Federal Decennial Census, fifty per cent (50%) of the money distributed to the county treasurer under subsection (d) of this section shall be allocated and distributed to the several cities and incorporated towns in such counties in the proportion which the population of each such city and town bears to the total population of such counties; and in counties having one (1) or more cities having a population of five thousand (5,000) or more, thirty-three and one-third per cent (33 1/3%) of the money distributed to the county treasurer under sub-section (d) of this section shall be allocated and distributed to the several cities and incorporated towns in such counties in the proportion which the population of each such city and town bears to the total population of such counties."

An allocation of funds to be made in accordance with this provision is sought to be enjoined herein upon the ground that the provision is not germane to the subject matter of the Act and therefore unconstitutional.

In State ex rel. Short, Atty. Gen., v. Johnson et al., 90 Okla. 21, 215 P. 945, we held:

"Section 57, art. 5 of the Constitution of Oklahoma, provides in part: 'Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. . . . Held, this provision is positive and mandatory. Besides it is reasonable and a substantial compliance therewith is not difficult.' "

And we quoted, with approval, the following from Louisiana v. Pillsbury, 105 U. S. 278, 26 L. Ed. 1090:

" 'A similar provision is found in several state Constitutions. Its object is to prevent the practice, common in all legislative bodies, where no such provision exists, of embracing in the same bill incongruous matters, having no relation to each other, or to the subject specified in the title, by which measures are often adopted without attracting attention, which, if noticed, would have been resisted and defeated. It thus serves to prevent surprise in legislation.' "

And we said further:

"Hence, such a provision has both a definite and wholesome purpose. In fact, from the number of states which have a similar provision and from the vast number of cases wherein such provision has been called upon in determining the validity of a statute, it may now be said to be universally recognized as a necessary limitation upon legislative bodies. It is a provision which has been frequently before this court. (citations omitted)"

We said in State ex rel. Oklahoma State Highway Commission et al. v. Horn et al., 187 Okla. 605, 105 P. 2d 234:

". . . The purpose of the constitutional provision under consideration is to forbid the joining of diverse or unconnected subjects in one and the same act. Missouri, Kansas & Texas R. Co. v. Washington County, 136 Okla. 191, 276 P. 769; Turner v. Cox, 138 Okla. 225, 280 P. 568; Oklahoma Light & Power Co. v. Corporation Commission of Oklahoma, 96 Okla. 19, 220 P. 54; C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841."

The subject-matter of the Act (House Bill 120) is the public school system. The funds allocated to counties in subdivision (b) of said section 22.2 were

to be used for school purposes. Therefore, the amendment thereof did not appertain to a matter diverse or disconnected from the subject-matter of the Act. Such cannot be said of the proviso incorporated in subdivision (e). The funds provided under subdivisions (d) and (e) are allocated to governmental agencies which are distinct from the constituted school authorities and are committed to uses that are distinct from school purposes. So far from being connected with the finances of the school department they are by law expressly disconnected therefrom and so made diverse thereto. By reason of such fact one considering the title of the Act instead of anticipating the possibility of such an enactment would be led to conclude, and justifiably so, that no such enactment appeared therein. For the same reason one reading the Act would, in view of the title thereof, be surprised by the incorporation of such amendment thereto. Under authority of said holdings of this court, the amendment in House Bill 120 is violative of section 57 of article 5 of the Constitution.

The same amendment was incorporated in an earlier Act, House Bill 430, approved May 20, 1949. It carried emergency clause. If that enactment is valid its operation would be unimpaired by the vice in House Bill 120.

The subject-matter of House Bill 430 is the same as that of the Act which it amends and the sufficiency of the title to embrace an amendment of the subdivisions is not questioned. Pertinent to the question involved, however, there appears in the title the following:

". . . amending Subsections (d) and (e) of Section 22.2, Title 47, O. S. 1941, as amended by the Session Laws of 1947".

The entire body of the Act, so far as same relates to the provisions of said section 22.2, is as follows:

"Section 1. Apportionment of Moneys, Funds, Revenues, Fees and Penalties. That subsection (e) of Section 22.2, Title 47, O. S. 1941, as amended by the Session Laws of 1947, be, and the same is, hereby amended to read as follows:

"(e) Twenty-five per cent (25%) shall be distributed to the various county treasurers of the State for allocation to the cities and incorporated towns, said twenty-five per cent (25%) to be apportioned to the county treasurers in the proportion which each county's population bears to the population of the State and shall be allocated to the cities and incorporated towns of each such county in that proportion which the population of the cities and incorporated towns bears to the total city and incorporated town population of the county.

"Provided further that in counties having one (1) or more cities which have population of one hundred thousand (100,000) or more as shown by the last Federal Decennial Census, fifty per cent (50%) of the money distributed to the county treasurer under Subsection (d) of this Section shall be allocated and distributed to the several cities and incorporated towns in such counties in the proportion which the population of each such city and town bears to the total population of such counties; and in counties having one (1) or more cities having a population of five thousand (5,000) or more, thirty-three and one-third per cent (33 1/3%) of the money distributed to the county treasurer under Subsection (d) of this Section shall be allocated and distributed to the several cities and incorporated towns in such counties in the proportion which the population of each such city and town bears to the total population of such counties.

"All monies allocated to cities and incorporated towns shall be used for the construction, maintenance, repair, improvement and lighting of streets and alleys."

It is contended that although the Act professes in its title to amend both subdivisions (d) and (e), the enactment thereunder purports to be an amendment of subdivision (e) only and that it is ineffective to constitute an amendment of subdivision (d) which is not re-enacted and published at length as required by section 57, article 5, Constitution.

The amendment while purporting to be a proviso to subdivision (e) is such only in form and could operate as a proviso only to subdivision (d) which is omitted. It is not, in fact, a proviso to subdivision (e) because it provides no condition, certain or contingent, that does or could qualify the operative force of subdivision (e). If operative the sole effect of the proviso would be to entitle certain cities and incorporated towns to receive revenue in addition to that provided under subdivision (e). And such effect would have resulted if subdivision (d) alone had been re-enacted with the proviso attached thereto. That it is, in effect, a proviso to subdivision (d) follows from the fact its force is expressly directed to the revenues involved under subdivision (d) and the effect thereof is to change, in part, the allocation therein made to counties into an allocation to cities and incorporated towns. That the proviso is, in its effect, an amendment within the purview of section 57, article 5 of the Constitution is clear, and the question is whether it is violative of the provision that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, and that so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length. The prime purpose of the constitutional provision is that when a section of an act is amended the same must be complete in itself so that when published as amended it will contain all of the law upon the subject embraced in the section. Such is impossible here without re-enactment of subdivision (d) because the proviso deals with only a part of the law covered by subdivision (d), and to ascertain the law of the section recourse must be had to both the original and the amendatory enactment.

The first clause of the constitutional provision is prohibitory in that it forbids the amendment of a statute by reference to its title only. The second clause is mandatory in that it requires that the section as amended shall be set forth and published at full lengh. A compliance with the mandate would necessitate republication of subdivision (d) with the proviso attached thereto. Cooley's Const. Lim., vol. 1, p. 313 et seq.

The rule applicable here is clearly stated in State v. Beddo, 22 Utah, 432, 63 P. 96 (cited along with others as supporting the cited text of Colley's Const. Lim.) as follows:

"The provisions of section 22, art. 6, of the State Constitution, providing that 'no law shall be revised or amended by reference to its title only; but the act as revised, shall be re-enacted and published at length,' are restrictive and mandatory; and when an act or a section is revised or amended the same must be complete within itself, so that when published as revised or amended it will contain all the law upon the subject embraced in the act or section."

And it was said in Copland v. Pirie et al., 26 Wash. 481, 67 P. 227:

". . . It is contended that the act violates, among others, section 37, art. 2, of the State Constitution, which provides that 'no act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.' In construing similar constitutional provisions the courts seem generally to have held that this requirement does not apply to supplemental acts not in any way modifying or altering the original act, nor to those merely adding new sections to an existing act, nor to acts complete in themselves, not purporting to be amendatory, but which by implication amends other legislation on the same subject. On the other hand, the courts are equally emphatic that if the act is not complete in itself, and is clearly amendatory of a former statute, it falls within the constitutional inhibition, whether or not it purports on its face to be amendatory or an independent act. See cases collected in 23 Am. & Eng. Enc. Law, pp. 282, 283. The section in question, it seems to us, is not complete in itself. It does not purport to add an additional section to the statute relating

to exemptions of personal property, but purports to, and does, ingraft into the section of the existing statute providing for such exemptions an additional exemption which alters its scope and effect. As such it is clearly amendatory of that section, and, to comply with the constitutional requirement, it should have set forth the section amended at full length. Bierer v. Burlock, 9 Wash. 63, 65, 36 P. 975. This view of this act was taken by the learned judge of the district court of Washington in construing the exemption statutes of this state with relation to the national bankruptcy act. With reference to the question he said: 'A statute which is complete in itself is not repugnant to the provision of the State Constitution above quoted merely because it changes the existing laws of the state, and by implication repeals prior enactments relating to the same subject. Warren v. Crosby (Ore.) 34 P. 661. But where, as in this case the new act is not complete, but refers to a prior statute, which is changed, but not repealed, by the new act, so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitute the vice prohibited by this section of the Constitution.'"

This court has in principle recognized the doctrines so declared. In re Lee, 64 Okla. 310, 168 P. 53; Pottawatomie County et al. v. Alexander, County Assessor, 68 Okla. 126, 172 P. 436.

We hold that said amendatory provisions of House Bill 120 and House Bill 430 are violative of the provisions of section 57 of article 5 of the Constitution, and therefore void.

Let the writ issue.

DAVISON, C. J., ARNOLD, V.C.J., and WELCH, CORN, LUTTRELL, JOHNSON and O'NEAL, JJ., concur. HALLEY, J., dissents.

HALLEY, J. (dissenting). The constitutionality of House Bill 430 of the 22nd Legislature depends upon whether or not the proviso placed in subsection (e) is intelligible without reference to subsection (d). To me it is not necessary to read subsection (d) to understand the proviso in (e) because all it does is to make disposition of the money that comes, under subsection (d), into the hands of the county treasurers of counties having cities of certain designated sizes. The amendment of subsection (e) could mislead no one, as its intention was patent on its face, and that was to give cities in counties having cities of more than 5,000 population much needed assistance in the construction, maintenance, repair, improvement, and lighting of their streets and alleys. It is also to be remembered that subsection (d) was not changed in any way other than through the proviso in subsection (e). Why require the Legislature to print a subsection when the amendment is clear without it? To me, the construction placed upon House Bill 430 by the majority opinion is both too strict and too technical. Undoubtedly the Constitution makers did not expect perfection from the Legislature, and we should not stifle an honest attempt to relieve a very troublesome problem in municipal government in this state, unless the unconstitutionality of the act is beyond question. As was said in City of Pond Creek et al. v. Haskell, Governor, et al., 21 Okla. 711, 97 P. 338, a court will never declare an act of legislation, passed with the forms and solemnities requisite to give it the force of law, unconstitutional and void unless the nullity and invalidity of the act are placed in its judgment beyond a reasonable doubt.

I submit that there is nothing in the act in question which violates the purposes of section 57, art. 5 of our Constitution, the intention of which was to eliminate uncertainty and confusion, to enable members of the Legislature to act advisedly in the amendment of laws, and to prevent incautious or fraudulent legislation by requiring amendatory statutes to be so drafted that their meaning could be ascertained by an examination of such statutes themselves without the necessity of examining the

statute amended. See In re Lee, 64 Okla. 310, 168 P. 53; also 59 C.J., Statutes, secs. 448 and 450.

I dissent from the majority opinion.