ADAMS et al. v. FRY et al.

No. 35014.    May 1, 1951.

*230 P. 2d 915.*

Hurst & Hurst and Richard B. McDermott, Tulsa, for plaintiffs.

Lewis J. Bicking, Co. Atty., Tulsa County, and Hugh Webster, Asst. Co., Atty., Tulsa County, Tulsa, and Lewis

408

Raba, Co. Atty., Pawnee County, Pawnee, for defendants.

PER CURIAM. This is an original action to require payment of claims for judicial salary in addition to that paid by the state as provided by chapter 10, 1947 S. L. 592, 74 O. S. Supp. §251b. The plaintiffs are the district judges of the 14th District Court Judicial District composed of Tulsa and Pawnee counties. The foregoing act provides additional payments of salary out of the court funds of said counties. The defendants in the action are the court clerks of the named counties.

Before the passage of the foregoing act provision was made by the Legislature for the payment of additional salaries to district judges in populous areas on classification basis. The original act which became effective January, 1938, provided additional salary payable out of court funds for district judges in all district court judicial districts having a population in excess of 200,000 and a city therein having a population in excess of 100,000. Falling within this classification were the 7th District Court Judicial District (Oklahoma and Canadian counties) and the 14th District Court Judicial District (Tulsa and Pawnee counties). Each of those districts had more than the minimum population and each had a city within its boundaries with a population of more than 100,000, and the district judges of those districts from the effective date of the original act until the effective date of the act under consideration drew the additional salary provided from the court funds of the counties in the district as therein provided. That act was held constitutional and the policy of paying district judges in populous areas additional salary out of the court funds has been well established in this state.

The Legislature, no doubt thinking that a further differentiation should be made in the compensation of district judges in these populous classified areas in 1947, enacted the law under consideration and provided that the district judges of district court judicial districts having a population in excess of 250,000 and a city therein having a population in excess of 200,000, according to the federal census of 1940, or according to any succeeding federal census, should receive $4,000 per annum from the court funds of the counties of the districts. The 7th District Court Judicial District (Oklahoma and Canadian counties) falls within this classification. It is the only district at the time of the enactment which had a population greater than 250,000 and a city located within the district with a population greater than 200,000. The act further provided that in district court judicial districts having a population in excess of 200,000 "but not in excess of 250,000," and a city therein having a population of 100,000 "but not in excess of 200,000", according to the federal census of 1940, or according to any succeeding federal census, the district judges thereof should receive from the court funds of the counties therein situated $3,000 per annum. By the specific terms of the act its effective date was fixed as January 8, 1951.

The foregoing statements as to the district court judicial districts falling within the foregoing classification are based upon the 1940 federal census. According to the federal census of 1950 the population of the 14th District Court Judicial District has increased and in fact now exceeds 250,000, the minimum prescribed for the upper classification. Though the city of Tulsa, therein situated, has increased in population, it does not exceed 200,000, the minimum prescribed for the upper classification. The district in population has increased to such extent as to be within the upper classification but the population of the largest city therein has not increased to such extent. That judicial district is not within either classification according to the literal wording of the act quoted above because it now has a district population of more than 250,000.

The primary object of statutory construction is to ascertain the legislative intent. In order to ascertain this intent. the statute, and each and every part of it, should be construed as a whole, in the light of the general purpose and object of the act. People v. Illinois Merchants' Trust Co., 328 Ill. 223, 159 N.E. 266, 62 A.L.R. 318. The Legislature fixed certain minimum population requirements as a basis of classification for additional salary payable from the court funds. To be within a classification a judicial district must meet all the minimum population requirements for that classification. It was the intention of the Legislature that a district would remain in such classification so long as it possessed all said minimum population requirements and did not possess all the minimum population requirements of a higher classification. Since additional salary payable from the court fund is payable by reason of classification based upon population, it is absurd to say that the Legislature intended that a greater population in certain respects than the minimum required for a higher classification unclassifies a judicial district. To give full literal import to the language of the quoted expressions would render the classification arbitrary and capricious in that it would unreasonably exclude certain districts within the class as demonstrated by this case. The 14th Judicial District fell fully within the class at the time of the enactment but now, according to a succeeding decennial census, it does not fall within any class though it has a greater population than it had at the time the class was created.

Expressions in a classification provision of a statute which when given their literal import would clearly contrary the plain intention of the Legislature and destroy the classification otherwise reasonable and valid will be rejected as surplusage and disregarded. 50 Am. Jur., Statutes, §231, p. 219; People v. Illinois Merchants' Trust Co., supra; People of the State of Illinois ex rel. Bankers' Company of New York v. William J. Stratton, 335 Ill. 455, 167 N.E. 31, 63 A.L.R. 1046; State v. Bates, 96 Minn. 110, 104 N. W. 709, 113 A.S.R. 612; Kitchen v. Southern Ry., 68 S. C. 554, 48 S. E. 4, 1 Ann. Cas. 747; Trustees', Executors' & Securities Ins. Corp. v. Hooton, 53 Okla. 530, 157 P. 293.

In 1949 the Legislature passed Senate Bill No. 165 (74 O.S. Supp. §§250-250.3) which is a general salary act. Therein it is provided that all district judges shall receive from the state an annual salary of $7,200. The act was amended by inserting therein section 4 (74 O.S. Supp. §250.3) which reads:

"The provisions of this Act fixing the annual salaries of District Court Judges at Seven Thousand Two Hundred Dollars ($7,200.00) shall not operate to increase or change the aggregate annual salaries of the District Court Judges fixed by Chapter 10c, Title 74, page 389, Oklahoma Session Laws 1945, and Chapter 10, Title 74, page 592, Oklahoma Session Laws 1947, but the salaries of each of said Judges payable by the State shall be Seven Thousand Two Hundred Dollars ($7,200.00) rather than Five Thousand Dollars ($5,000.00) and the salary thereof payable by the counties affected from county court funds shall be One Thousand Eight Hundred Dollars ($1,800.00) and Eight Hundred Dollars ($800.00), respectively, rather than Four Thousand Dollars ($4,000.00) and Three Thousand Dollars ($3,000.00) as provided in said Chapter 10."

No reference is made in the title of the act to the contents of said section 4, and section 4 is the only provision of the act that in any way relates to the subject matter thereof, that is, the amount of additional salary payable from court funds. It is obvious that the foregoing section is not complete within itself. The classification basis of payment of additional salary out of court funds is entirely missing. The source of the additional payments is not mentioned in the section. Certainly there was no intention to repeal chapter 10, nor is there any repeal of any provision thereof by implication.

Though it was obviously the intention of the Legislature by the enactment of said provision to reduce the aggregate compensation of district judges of judicial districts falling within the classification of chapter 10 to a lesser amount than they would otherwise receive, the pertinent and necessary basis of additional salary under chapter 10 is omitted in section 4 of Senate Bill No. 165. The inescapable conclusion is that by said section 4 the Legislature was attempting to amend section 1 of chapter 10 to reduce the payment from the court funds to a lesser amount.

The Constitution, article 5, sec. 57, provides:

" . . . and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length; . . ."

To know what district court judicial districts are affected, it is necessary to look at section 1 of the 1947 act; the classification therein prescribed governs the applicability of the 1947 act as well as section 4 of the 1949 act. To know the source of the additional payment it is necessary to look at section 1 of the 1947 act. To know the amount of the reduction of the payment from the court fund, resort must be made to section 4 of the 1949 act. To find all the law on the subject it is necessary to read section 1 of the 1947 act and section 4 of the 1949 act. and correlate them. It was to avoid this result that the foregoing provision was placed in the Constitution.

Where, as in this case, the new act is not complete, but refers to a prior statute, which is changed, but not repealed, by the new act, so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitute the vice prohibited by this section of the Constitution. Board of County Commissioners of Tulsa County v. Oklahoma Tax Commission, 202 Okla. 269, 212 P. 2d 462.

Writ granted.

ARNOLD, C.J., LUTTRELL, V.C.J., and CORN, GIBSON, HALLEY, and JOHNSON, JJ., concur. WELCH, DAVISON, and O'NEAL, JJ., dissent.

WELCH, J. (dissenting). I think it erroneous to consider the 1949 act, or any part thereof, as merely amendatory of the 1945 act, or of the 1947 act. It seems to me the clear intent of the 1949 act was to preserve from repeal a part of the benefits granted by the 1947 act by reference thereto in the 1949 act.

If the legislative intent is clear then it is our duty to sustain the act unless it is apparent beyond a reasonable doubt that it violates a constitutional provision.

I think it was the purpose of the 1949 act not merely to amend any one or more prior salary acts, but to enact a comprehensive salary act fixing future salaries of the numerous officials therein named.

This case concerns only the provisions as to district judges. For some years prior to 1945 each district judge was entitled to draw a salary of $4,000, and in certain districts coming within a fixed classification, the judges therein were entitled to draw an additional salary of $3,200 from the court funds of the counties by provisions of Senate Bill No. 34, art 8, chap. 20, S. L. 1937, page 28, which was "an act fixing the salaries of district judges in judicial districts" having a certain population classification.

In 1945 the 20th Legislature adopted Senate Bill No. 11, chap. 10c, title 74, page 389, S. L. 1945, raising the salary of all district judges from $4,000 to $5,000, effective in January, 1947. That act specifically reserved from repeal or excepted from repeal the afore-

said act, art. 8, chap. 20, S. L. 1937, (§251b, title 74, O.S. 1941.) This Senate Bill No. 11 was approved March 27, 1945.

The same legislative session adopted Senate Bill No. 45, chap. 10b, title 74, S. L. 1945, page 389, which amended the aforesaid art. 8, chap. 20, S. L. 1937, 74 O. S. 1941 §251b, to provide additional salary for district judges in certain districts to each receive an additional salary from court funds of $2,200 per annum, and in certain other classified districts the district judges should receive an additional salary from the court funds of $2,000 per annum.

So that. by these last two acts, both to become effective in January, 1947, the district judges of the state would each be entitled to receive $5,000, but in certain districts the aggregate salary would be $7,200, and in certain other districts the salary would be $7,000. This was the first time a special classification was made that could apply to the judges of District 14 involved in this case, and by that classification such judges could receive an aggregate salary of $7,000, effective in January, 1947.

The last act above referred to was amended in 1947 when the Legislature adopted H. B. No. 365, Chap. 10, title 74, S.L. 1947, page 592, for the specified purpose of amending the aforesaid act dealing with payments of additional salary to certain district judges out of their court funds. By the provisions of that act, in addition to the salary paid by the state, each district judge in certain classified districts should receive an additional salary from the court funds of $4,000 per annum, and in certain other classified districts each district judge should receive additional salary from the court funds of $3,000 per annum, effective the second Monday in January, 1951. Thus, after the legislation adopted in 1947, each district judge would receive $5,000, and in certain classified districts each district judge would receive the aggregate salary of $9,000, and in certain other classified districts each district judge would receive the aggregate salary of $8,000, effective in January, 1951. This latter classification or aggregate salary of $8,000 then applied to District 14 here involved. By this 1947 legislation there was a raise in salary of the district judges in these classified districts, but no salary change in other districts over the state.

In 1949, the 22nd Legislature adopted Senate Bill No. 165, chap. 10, title 74, S. L. 1949, page 625. The title thereto was:

"An Act fixing the annual salaries of elective State officers holding executive, administrative, and judicial offices; providing the said executive and administrative salaries shall not be in effect during the current constitutional or statutory terms of office of said officers; making certain exceptions; repealing conflicting laws; making provisions of Act severable; and declaring an emergency."

Provision was made in that act for salaries of numerous state officers, including district judges. Section 3 of the act raised the salary of district judges generally to $7,200 per annum. Section 4 of that act, the specific provision involved in this case, is quoted in full as follows:

"The provisions of this Act fixing the annual salaries of District Court Judges at Seven Thousand Two Hundred Dollars ($7,200.00) shall not operate to increase or change the aggregate annual salaries of the District Court Judges fixed by Chapter 10c, Title 74, page 389, Oklahoma Session Laws 1945, and Chapter 10, Title 74, page 592, Oklahoma Session Laws 1947, but the salaries of each of said Judges payable by the State shall be Seven Thousand Two Hundred Dollars ($7,200.00) rather than Five Thousand Dollars ($5,000.00) and the salary thereof payable by the counties affected from county court funds shall be One Thousand Eight Hundred Dollars ($1,800.00), and Eight

Hundred Dollars ($800.00), respectively, rather than Four Thousand Dollars ($4,-000.00) and Three Thousand Dollars ($3,000.00), as provided in said Chapter 10."

Thus, by the provisions of this quoted 1949 act, each district judge would be entitled to receive $7,200, while in certain classified districts each district judge would continue to receive the aforesaid aggregate sum of $9,000, and in the other classified districts (applicable to District 14 here involved) each district judge would continue to receive the aggregate sum of $8,000; that is, in the classified districts wherein the salary had already been raised by the 1947 act effective in January, 1951, that aggregate salary fixed in 1947 was continued as the fixed salary by the 1949 act, and it seems to me that is made plain by the 1949 act.

On that point, it is noted that subsequent to the passage and approval of the last above-quoted 1949 act, the same 22nd Legislature adopted Senate Bill No. 75, chap. 4e, title 20, S. L. 1949, page 190, which provided that, effective January 8, 1951, each district judge in certain classified districts should receive a further additional salary of $1,-200 per annum from the court funds, and that in certain other classified judicial districts each district judge should receive a further additional salary of $1,000 per annum payable from the court funds.

Thus, after adoption of both these acts of the 1949 Legislature, district judges generally would receive $7,200. In certain classified districts each district judge would receive an additional salary from the court funds of $1,800 under section 4, above quoted, and the further additional sum of $1,200 under chap. 4e, title 20, S. L. 1949, page 190, or the aggregate salary of $10,200. While in certain other classified districts each district judge would receive an additional salary from the court funds of $800 under the above-quoted section 4, and $1,000 as further addi-tional salary from the court funds under chap. 4e, title 20, above referred to, or the aggregate salary of $9,000.

Thus, it appears that following the original special classification of districts by which district judges therein were to receive additional salary from the court fund (the 1937 act above cited), there were instances of subsequent legislative changes, both up and down, as to the amount certain district judges were to receive from the court funds.

The district judges involved in this action received no salary raise by the terms of this act passed in 1949, but they received no reduction in salary, since the above-quoted section 4 of chap. 10, title 74, S. L. 1949, pages 625-6, by its terms preserved their right to receive $800 per annum from the court funds of their district, and the aggregate salary of $8,000, to which figure they were raised in 1947.

Since the Legislature so clearly intended by this 1949 act to provide and preserve for these judges an aggregate salary of $8,000 payable $7,200 out of state funds and $800 out of court funds, it is our duty to sustain the act in all its provisions unless it violates the Constitution. This is the same aggregate amount of salary as was provided for these judges by the 1947 act to be effective in January, 1951.

The Legislature may make valid provision for the payment of additional salary to district judges out of the court funds of their districts. That is settled by former decision. The Legislature could change the amount to be paid to district judges out of their court funds, and, as I have pointed out, such changes in such amount have in fact been made both up and down.

The majority opinion holds that section 4, above quoted, from the first 1949 act, is unconstitutional and invalid as being an unconstitutional amendment of chap. 10, title 74, page 592, Oklahoma Session Laws 1947.

It is generally held that if a legislative act is susceptible of two interpretations, one of which would render the act valid, while the other would subject it to grave doubts upon constitutional grounds, that construction should be adopted which renders the act valid and frees it from doubts on constitutional consideration. Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okla. 177, 90 P. 2d 899.

I think it clear in the terms of section 4 of the first 1949 act that the reference to the provisions of the 1947 act was for the sole purpose of identifying the judicial districts in which the additional salary provisions of the 1949 act itself should apply. By positive provisions of the 1949 act the district judges of the state are declared entitled to $7,200 annual salary, and in addition thereto certain district judges are to have an additional annual salary payable from court funds in the amounts of $1,800 and $800, respectively, in such districts as described and distinguished in the 1947 act by population, and by the salary figures therein of $4,000 and $3,000, respectively. With its repealing clause, as noted in section 6, the 1949 act is in reality a complete act in itself, affirmative and original in character, and although a reference is made to the 1947 act for the application of some of its provisions, there appears no conflict with the constitutional restrictions, sec. 57, art. 2, supra.

In 50 Amer. Jur., Statutes, §215, it is stated:

"Statutes which refer to other statutes and make them applicable to the new legislation are called 'reference statutes.' Such a statute is not strictly amendatory or revisory in character within the meaning of a constitutional provision which forbids a law to be revised, altered, or amended by reference to its title only."

In the notes to the text, Phoenix Assur. Co. v. Fire Dept., 117 Ala. 631, 23 So. 843, State v. Rasmussen, 14 Wash. 2d 397, 128 P. 2d 317, and other cases are cited.

In the Alabama case, an act extending to the fire companies of a certain city the benefit of the provisions of an earlier act, which applied only to companies in another city, was upheld, in view of its specific reference to that act and its provision that for every place in the earlier statute in which the name of the other city appeared the name of the new city should be deemed to be substituted.

In the Washington case it was held that a "reference statute," which refers to other statutes and makes them applicable to the subject of legislation for purpose of carrying into execution the reference statute and not for purpose of reviving or continuing in force the statute referred to, is not violative of constitutional provisions that no act shall be revised or amended by mere reference to its title, and that the act revised or amended shall be set forth at full length.

Since the Legislature could allow additional salaries from court funds, the Legislature could change the allowance from court funds. Then, of course, the Legislature could repeal salary allowances from court funds, or the Legislature in subsequent legislation could preserve from repeal, or except from repeal, the salary allowance from court funds.

In the 1945 act above referred to, chap. 10c, title 74, page 389, S. L. 1945, the Legislature expressly reserved from repeal the then existing provision for additional salary from court funds. While in this 1949 act, the general and comprehensive salary act, chap. 10, title 74, S. L. 1949, pages 625-6, the Legislature by reference partially preserved from repeal the then existing

act for additional salary out of court funds, and thereby provided for additional salary out of court funds to the extent of $1,800 and $800, respectively, as expressly stated in section 4 of such act.

Upon the adoption of the 1947 act the status of the 14th Judicial District was fixed as pertained to payment of salaries of the judges therein above the uniform salary schedule that prevailed throughout the state, and in that district the judges were entitled to the aggregate salary of $8,000 per annum.

Upon the adoption of the 1949 act, which refers to the 1947 act, and makes its descriptive provisions applicable to the salary provisions of the 1949 act, the judges in the said 14th Judicial District became entitled to $7,200 annual salary payable by the state, and $800 additional annual salary payable from the court funds of the counties of the district apportioned between counties, according to relative population, or the same aggregate salary of $8,000.

I agree with the statement in the majority opinion that:

"The primary object of statutory construction is to ascertain the legislative intent. In order to ascertain this intent the statute, and each and every part of it, should be construed as a whole, in the light of the general purpose and object of the act."

A proper application of that principle seems to me to require a conclusion that plaintiffs are entitled to a writ of mandamus to receive salary payment from the court funds only to the extent authorized and provided by the 1949 act.

The courts must sustain statutes, if possible, and nullify them only when they are clearly unconstitutional. Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002, and Application of State of Oklahoma Bldg. Bonds Commission, 202 Okla. 454, 214 P. 2d 934.

A statute is presumed to be constitutional, and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. Rakowski v. Wagoner, 24 Okla. 282, 103 P. 632; Casner v. Meriwether, 152 Okla. 246, 4 P. 2d 19, and Protest of Downing, 164 Okla. 181, 23 P. 2d 173.

A statute will, if possible, be so construed as to render it valid. Rakowski v. Wagoner, supra; Campbell v. Cornish, 163 Okla. 213, 22 P. 2d 63.

A statute will not be held unconstitutional, unless its violation of the fundamental law is clear and palpable. Stout v. State, 36 Okla. 744, 130 P. 553; Ryan v. State, 102 Okla. 168, 228 P. 521; Munroe v. McNeill, 122 Okla. 297, 255 P. 150; Wallace v. Gassaway, 148 Okla. 265, 298 P. 867; Excise Board of Stephens County v. Chicago, R. I. & P. Ry. Co., 168 Okla. 523, 34 P. 2d 268; Grable v. Childers, 176 Okla. 360, 56 P. 2d 357; City of McAlester v. Jones, 181 Okla. 77, 72 P. 2d 371; Phelps v. Childers, 184 Okla. 421, 89 P. 2d 782; Standard Co. Dairy v. Allen, 188 Okla. 287, 108 P. 2d 164; Hazel-Atlas Glass Co. v. Walker, 195 Okla. 470, 159 P. 2d 268, and City of Ardmore v. Excise Board of Carter County, 200 Okla. 516, 197 P. 2d 961.

An authority that might well be controlling here is the former decision of this court in Town of Haskell v. Edmonds, 90 Okla. 44, 215 P. 629. The majority opinion here rather follows the dissenting opinion there, but that theory of statutory construction was rejected there many years ago.

That decision is cited, 59 C. J. 617, for the rule that:

"If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the Constitution. Town of Haskell v. Edmonds, 215 P. 629, 90 Okla. 44, 46."

In that case it was held in the syllabus:

"An act of the Legislature, which is in form original and in itself intelligible and complete, and does not, either in its title or in its body, appear to be revisory or amendatory of any existing law, is not within the inhibition of section 57, art. 5 of the Constitution, providing that 'no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length;' and this is true, even where such act seeks to effectuate the powers conferred by referring to an act requiring the officers provided for thereunder to proceed in the performance of their duties in accordance with general laws previously enacted."

"In the construction of a statute it is the duty of the court to seek to ascertain and carry out the intention of the Legislature in its enactment, and to give full effect to such intention."

Language in the body of that opinion and in the other decisions therein cited require a conclusion opposite to the majority opinion herein as I see it.

The Arkansas Constitution, art. 5, §23, is identical with the majority opinion quotation from our Constitution, art. 5, §57. On the point here involved concerning that specific constitutional provision, the rule of that state is as follows:

"An act complete in itself, and which would not mislead the members of the Legislature, is not within the evils to be remedied by this provision of the Constitution, and cannot be held to be prohibited by it without violating its plain intent." Grable v. Blackwood, 180 Ark. 311, 22 S. W. 2d 41.

On application of these well established rules I cannot see in this 1949 act here considered any of the obscurity or the tendency to confusion spoken of in the majority opinion. It seems to me the 1949 act is too plain for that, and that it full well demonstrates the legislative intent as to these salaries.

A careful reading of the decision in County Commissioners v. Oklahoma Tax Commission, 202 Okla. 269, 212 P. 2d 462, discloses that it does not support the majority opinion here. There the two acts were quite complicated and offered much opportunity for confusion; not so here. There the two acts in their title purported to be amendatory of stated former acts, but the amendments were not properly set out in the bodies of the acts. In one act there was an effort to include diverse and disconnected matter, in the other, by inadvertence or otherwise, there was some total omission, or failure to adequately complete the act, situations far different from the one here. Therefore, I think the vital portions of the majority decision are not bottomed on sustaining authority of either text statement or decision rule.

For the reasons stated, and on the authorities cited, I think the majority opinion goes too far and is erroneous, and I respectfully dissent.

I am authorized to say that DAVISON and O'NEAL, JJ., concur in this dissenting opinion.